CAUSE NO. 2018-82890

| | | |
|---|---|---|
| Fiesta Mart, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ACON Investments, LLC | § | |
| | § | |
| Defendant. | § | |
| | § | 151ST JUDICIAL DISTRICT |
| | § | |

## PLAINTIFF'S FIRST-AMENDED PETITION AND REQUEST FOR DISCLOSURE

Plaintiff Fiesta Mart, LLC, successor-in-interest to Fiesta Mart, Inc. ("Plaintiff," "Fiesta,"
or "Fiesta Mart"), respectfully files this First-Amended Petition and Request for Disclosure
against Defendant ACON Investments, LLC ("Defendant" or "ACON").

### I. INTRODUCTION

1.     This action arises out of Defendant ACON's wrongful diversion and theft of
insurance property rights and the resulting proceeds belonging to Plaintiff Fiesta Mart in respect
of Fiesta Mart stores damaged by Hurricane Harvey.

### II. DISCOVERY CONTROL PLAN

2.     Plaintiff intends to conduct discovery in this case under a Level 3 discovery
control plan as provided by Rule 190 of the Texas Rules of Civil Procedure.

### III. REQUEST FOR DISCLOSURE

3.     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiff requests that
Defendant disclose the information and materials listed in Rule 194.2 within thirty (30) days.

## IV. PARTIES

4.     Plaintiff Fiesta Mart, LLC is a Texas Limited Liability Company with its principal place of business in Houston, Texas.

5.     Defendant ACON Investments, LLC is a Delaware Limited Liability Company with its principal place of business in Washington, D.C.  Pursuant to Section 17.044 of the Texas Civil Practice and Remedies Code, Defendant may be served through the Secretary of State of Texas, provided that the citation and petition are forwarded to Defendant's home office address, 1133 Connecticut Avenue NW, Suite 700, Washington D.C. 20036, by certified mail, return receipt requested.

## V. JURISDICTION & VENUE

6.     The Court has subject matter jurisdiction over this action because the amount in controversy exceeds the minimum jurisdictional limits of this Court.

7.     The Court has personal jurisdiction over Defendant because it has purposefully availed itself of the privileges and benefits of conducting business in this state, as defined in Section 17.042(2) and/or (1) of the Texas Civil Practice and Remedies Code.  Without limitation, Defendant has engaged in business in this state by committing a tort in whole or in part in Texas and/or entering into a contract with a Texas resident with performance in whole or in part in Texas.  Defendant wrongfully submitted proofs of loss on behalf of a Texas resident concerning real and personal property located in Texas that were leased, owned, and/or operated by such Texas resident for purposes of diverting insurance rights and the resulting proceeds payable in Texas.  On information and belief, Defendant also owns and/or operates ongoing businesses in Texas, including Igloo Products Corporation of Katy, Texas and Borden Diary Company of Dallas, Texas.

8.      Venue of this action is proper in Harris County, Texas, pursuant to Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code, because a substantial part of the events or omissions giving rise to the claims occurred in Harris County, Texas, and because Harris County is where the insured properties at issue in this lawsuit are located. In the alternative, venue is proper in Harris County, Texas under Section 15.002(a)(4) of the Texas Civil Practice and Remedies Code, because Plaintiff is headquartered in Harris County, Texas.

## VI. FACTUAL BACKGROUND

9.      Fiesta Mart was founded in Houston in 1972. Today, there are more than 60 Fiesta stores in Texas, serving customers from over 90 countries of origin. Houston remains the principal location of most Fiesta Mart stores and the location of Fiesta's corporate headquarters.

### A.      Hurricane Harvey

10.      On August 25, 2017, Hurricane Harvey made landfall in Houston. The storm dumped an unprecedented 40 inches of rain in the area and caused massive damages and dislocation to Houston businesses and residents alike. Fiesta Mart was no exception. The Fiesta Mart at Mesa and Tidwell (Store #23; 9419 Mesa Drive, Houston, Texas 77028) sustained serious damage. After extensive efforts, Fiesta reopened that store on or about October 4, 2017, bringing quality and affordable food options to a still flood-damaged part of the city.

11.      Other Fiesta stores fared even worse. The Fiesta Mart near the Addicks Reservoir at Clay Road and Texas 6 (Store # 56; 4330 Highway 6, North Texas, 77084) took on nearly 10 feet of water. It remains closed today, as does Fiesta Mart Store # 10 (12201 E. Freeway, Houston, Texas 77015). Fiesta management is working towards rebuilding or replacing both stores, provided it timely receives expected insurance recoveries.

12.     Fiesta Mart used, operated, owned and/or leased store numbers 10, 23, and 56 and other Fiesta Mart stores that suffered property damage and/or business interruption from Hurricane Harvey (collectively, the "Harvey Loss").

13.     Fiesta paid to repair damage from the Harvey Loss, including the damage to store numbers 10, 23, and 56. Fiesta likewise suffered business interruption loss from the Harvey Loss.

**B.     The Primary Policies**

14.     At the time of Hurricane Harvey, Fiesta Mart – including store numbers 10, 23, and 56 mentioned above – was insured under several property insurance policies collectively providing $400 million in limits. The first layer of policies, called the primary layer, afforded $25 million in limits (collectively, the "Primary Policies" and individually, a "Primary Policy"). A chart summarizing certain elements of the Primary Policies is set forth below:

| Insurer | Policy No. | Policy Period | Policy Limits | % of Primary Layer |
|---|---|---|---|---|
| Allied World Assurance Company | 0310-7409-1A | 06/01/17-06/01/18 | $2.5M p/o $25M | 10% |
| Arch Specialty Insurance Company | ESP7303053-01 | 06/01/17-06/01/18 | $5M p/o $25M | 20% |
| Aspen Specialty Insurance Company | PRAGK1017 | 06/01/17-06/01/18 | $3M p/o $25M | 12% |
| Certain Underwriters at Lloyd's of London (Hiscox) | URS 2552391.17 | 07/06/17-06/01/18 | $2.5M p/o $25M | 10% |
| HDI Global Insurance Company | CPD1488300 | 06/01/17-06/01/18 | $10M p/o $125M | 8% |
| Indian Harbor Insurance Company | PRO0047629 | 06/01/17-06/01/18 | $5M p/o $25M | 20% |
| Westport Insurance Corporation | NAP 2001214 01 | 06/01/17-06/01/18 | $80M p/o $400M | 20% |

15.     The Primary Policies are contracts of indemnity. Specifically, they provide that "[i]n consideration of the premium charged, the subscribers hereto, hereinafter referred to as the Insurer(s) and/or Company(ies), do severally, but not jointly, agree to indemnify the Insured for

the amount recoverable in accordance with the terms and conditions of the Policy." (Primary Policies at Participation Endorsement.)

16.     Fiesta paid the premium allocated to it for coverage under the Primary Policies.

17.     Specifically, Endorsement A1 to the Primary Policies sets forth certain terms and conditions "[w]ith respects to the entity of, Fiesta Mart." (*Id.* at End. A1.) In addition to establishing a deductible of $250,000 for certain perils, Endorsement A1 sets an "Allocated Premium" figure that varies by insurer.

18.     For example, one of the Primary Policies is Policy No. 0310-7409-1A issued by Allied World Assurance Company for the period June 1, 2017 to June 1, 2018 (the "AWAC Policy"). Endorsement A1 to the AWAC Policy states "Allocated Premium - $125,793."

19.     Consistent with that figure, Fiesta Mart was billed $125,792.60 respecting the AWAC Policy in June 2017. A copy of the relevant portion of the invoice is below:



20.     Fiesta paid in full the billed amount respecting the AWAC Policy.

21.     Fiesta has likewise paid the premium allocated to it for coverage under the other Primary Policies and has otherwise performed all its obligations under the Primary Policies.

22.     Fiesta also falls within the definition of "Insured" under the Primary Policies.

23.     Each Primary Policy defines "Insured" as follows:

> NAMED INSURED. This Policy insures ACON Investments, LLC <u>and as per the attached endorsement schedule</u>, any subsidiary, associated, allied or affiliated company, corporation, firm, organization, partnership, Joint Venture, Limited Liability Company or individual, whether wholly or partially owned or controlled by the Insured, where the Insured maintains an interest, or where the Insured is required to provide insurance, as now exist or are hereafter constituted or acquired, and any other party in interest that is required by contract or other agreement to be named, all hereafter referred to as the "Insured".

(Primary Policies at ¶ 1) (emphasis as original.)

24.     At the time the Primary Policies were issued and at the time of the Harvey Loss, on information and belief, Fiesta Mart was a "subsidiary, associated, allied, or affiliated ... Limited Liability Company...wholly or partially owned or controlled" by ACON.

25.     As such, Fiesta falls within the definition of Insured under the Primary Policies.

26.     "Fiesta Mart, L.L.C." is also identified as the Insured on over 70 certificates of insurance issued respecting the Primary Policies for the relevant policy period. Each such certificate lists all seven Primary Policies and states that "the policies of insurance listed below have been issued to the insured named above for the policy period indicated."

27.     Each Primary Policy was in force at the time of the Harvey Loss.

28.     Fiesta did not draft any of the Primary Policies.

**C.      Fiesta Submits the First Proofs of Loss**

29.     The Primary Policies provide that it "shall be necessary for the Insured to render a signed and sworn proof of loss to the Insurer or its appointed representative stating: the place,

time and cause of loss, interest of the Insured and of all others, the value of the property involved, and the amount of loss, damage or expense sustained." (Primary Policies at ¶ 42.)

30. The Primary Policies also state that "[l]oss, if any, shall be adjusted with and payable to the Insured, or as directed by them." (*Id.* at ¶ 6.)

31. On or about September 26, 2017, Fiesta Mart, through its Vice President and Chief Financial Officer Wayne S. Peterson, submitted to the Primary Policy insurers signed and sworn First Partial Proofs of Loss respecting the Harvey Loss (collectively, the "First Proofs").

32. The First Proofs were notarized in Harris County, Texas and, on information and belief, were submitted from Harris County, Texas.

33. The First Proofs sought recovery for a "Flood (CAT #1743) loss" occurring on August 26, 2017, due to "Flood loss associated with CAT #1743 - Hurricane Harvey." The location specified was "[m]ultiple properties (grocery stores / supermarkets) in Houston, TX." The First Proofs describe the "title and interest" of the insured in the properties at the time of the loss as "Fiesta Mart, L.L.C." In the section to identify any other persons that had an interest or encumbrance on the identified property, the Proofs say "None." The First Proofs also set forth the claim numbers used by the Primary Policy insurers for the Harvey Loss.

34. On information and belief, the broker for the Primary Policies is Willis of Illinois, Inc. ("Willis"). In connection with the First Proofs, the broker Willis "reminded the Markets that the check needs to be addressed to Fiesta and not ACON Investments."

35. Insurers for the Primary Policies accepted the First Proofs from Fiesta and did not challenge Fiesta's right to submit them.

36. The Primary Policy insurers adjusted the First Proofs with Fiesta and paid Fiesta directly the $7.5 million requested therein. For example, the parent of Primary Policy insurer

Indian Harbor Insurance Company sent Fiesta a check payable to "Fiesta Mart LLC" and referencing its policy number (PRO0047629), the date of loss for the Harvey Loss (August 26, 2017), and a description stating "advance for hurricane Harvey." A copy of that check (redacted in part for security purposes) is set forth below:



37.     On information and belief, ACON was aware of and never objected to Fiesta's submission of the First Proofs and the Primary Policy insurers' resulting $7.5 million payment to Fiesta thereon.

**D.     Fiesta Mart's Business Interruption Loss**

38.     In addition to property damage, Fiesta Mart also suffered business interruption from the Harvey Loss.

39.     Each Primary Policy covers "the loss resulting from the necessary interruption of business conducted by the Insured...caused by loss, damage, or destruction by any of the perils covered herein during the term of this policy to real and personal property as covered herein." (Primary Policies at ¶ 11.)

40.     Fiesta Mart sustained an actual loss resulting directly from the interruption of business at certain of its stores caused by Hurricane Harvey flooding.

41.     It is unquestioned that Fiesta, not ACON, conducted the business that was interrupted at the subject stores, and that those stores were operated, owned, and/or leased by Fiesta and not ACON.

42.     Indeed, beginning in September 2017, Fiesta Mart was contacted by forensic accountants retained on behalf of the Primary Policy insurers, Matson Driscoll & Damico LLP ("MDD") to gather information about the business conducted at the subject Fiesta stores. In a section entitled "Business Interruption," MDD asked for Fiesta's weekly and monthly sales information, payroll reports, and a detailed claim for loss of business income and extra expenses incurred. In a section entitled "Inventory" in the same letter, MDD asked for detailed inventory and daily sales figures for "Locations 10, 23, and 56."

43.     In light of the insurers' retention of MDD and "[b]ecause of the size and scope of Fiesta's loss," Willis encouraged Fiesta Mart likewise to hire forensic accountants in order to "assist you in the preparation and calculation of your Business Interruption and Time Element (Civil Authority, Ingress/Egress) loss" and to "work for Fiesta as part of our loss team."

44.     Fiesta did so, retaining forensic accountants associated with Willis.

45.     In September 2018, Willis sent materials reflecting that both its forensic accountants and those at MDD had agreed to employ a $250,000 deductible in their estimates of the Harvey Loss. That figure is different from the $100,000 deductible that would otherwise apply to Flood losses at the subject Fiesta stores pursuant to paragraph 5(f) of the Primary Policies, and is consistent with the $250,000 deductible set by Endorsement A1, the endorsement that applies "[w]ith respects to the entity of, Fiesta Mart."

**D.**      <u>**ACON Sells Fiesta**</u>

46.      On information and belief, ACON purchased Fiesta in 2015. *See* www.aconinvestments.com/aconacquiresfiesta/ ("Washington, DC, April 29, 2015 – ACON Investments, L.L.C. and its affiliates ('ACON') announced today that it has acquired Fiesta Mart, L.L.C....") (visited Nov. 13, 2018).

47.      On or about April 30, 2018, ACON sold Fiesta Mart to a third party.

**E.**      <u>**ACON Submits the Second Proofs of Loss Despite Having Sold Fiesta**</u>

48.      On information and belief, on or about August 31, 2018, ACON submitted signed and sworn Second Partial Proofs of Loss under the Primary Policies in respect of the Harvey Loss (collectively, the "Second Proofs"). The Second Proofs sought a recovery of $4,780,347, being a partial loss of $12,530,347 less a $250,000 deductible and a $7,500,000 first partial payment.

49.      The Second Proofs indicate they were signed under oath by one Teresa Y. Bernstein and notarized in Washington, D.C.

50.      Fiesta Mart does not employ anyone named Teresa Y. Bernstein and it has no operations or offices in Washington, D.C.

51.      On information and belief, Teresa Y. Bernstein is employed by or on behalf of ACON.

52.      The Second Proofs covered the same Harvey Loss as the First Proofs. Specifically, the Second Proofs:

     a)      seek payment respecting "Flood loss associated with CAT #1743 - Hurricane Harvey" on August 26, 2017;

     b)      describe the damaged property as "[m]ultiple properties (grocery stores / supermarkets) in Houston, TX;"

c) use the same claim numbers (2017019830, *et seq.*) as the First Proofs; and

d) describe the "title and interest" in the damaged property as "Fiesta Mart, L.L.C." with "None" identified in the section for others having other title, interests, or encumbrances in the subject property.

53. At the time it submitted the Second Proofs, ACON had no title or interest in Fiesta Mart, including in Fiesta store numbers 10, 23, or 56.

### F. ACON Usurps Fiesta's Right to Insurance Recovery for the Second Proofs And Misappropriates the Resulting $4,780,347 in Insurance Proceeds

54. In September 2018, Willis advised Fiesta that ACON had taken the position that because it was a named insured on the Primary Policies at the time of the Harvey Loss, ACON has "the right to payment under the policy and as such has instructed the adjuster and Willis to direct payment to ACON."

55. Willis added that "the Actual Cash Value (ACV) for the Property Damage (PD) for Stores numbers 23, 56, and 10, has been paid in full."

56. It was in this way that Fiesta first learned of and received the Second Proofs. With respect to the Second Proofs, Willis stated that "Insurers forwarded payment direct to ACON Investments," which would have been "either the week of August 27th or the week of Sept 4th."

57. On information and belief, ACON received the $4,780,347 in insurance proceeds under the Primary Policies respecting the Harvey Loss sought by the Second Proofs.

58. On October, 4, 2018, Fiesta wrote to ACON advising that the $4,780,347 insurance payment belonged to Fiesta and requesting its return.

59. On October 10, 2018, a law firm purporting to represent ACON acknowledged the October 4 letter and responded that "ACON must decline. Those insurance proceeds belong to ACON...."

60. Fiesta may seek additional recoveries under the Primary Policies for the Harvey Loss. It is reluctant to do so, however, in light of ACON's position that it and not Fiesta is entitled to insurance rights and subsequent proceeds under the Primary Policies respecting the Harvey Loss.

## VII. CAUSES OF ACTION

### A. Unjust Enrichment

61. The allegations of paragraphs 1 through 60 are incorporated herein by reference as if set forth fully below.

62. Fiesta generally pleads its rights to restitution. Specifically, as described above, Fiesta was entitled to insurance rights and proceeds under the Primary Policies for the Harvey Loss.

63. Nonetheless, unbeknownst to Fiesta, ACON wrongfully usurped those rights by submitting the Second Proofs and collecting the resulting insurance proceeds owed to Fiesta for the Harvey Loss.

64. As a result, ACON has unlawfully obtained by fraud and/or the taking of undue advantage benefits owed to Fiesta.

65. ACON has failed to return the proceeds or otherwise make restitution to Fiesta.

66. As a proximate cause of such actions, Plaintiff Fiesta has been damaged.

### B. Tortious Interference with Contract

67. The allegations of paragraphs 1 through 60 are incorporated herein by reference as if set forth fully below.

68.     Other than limits and deductibles, each Primary Policy "shall apply separately to each person or organization covered as Insured in the same manner and to the same extent as though a separate policy had been issued to each such person or organization." (Primary Policies at ¶ 27.)

69.     Plaintiff Fiesta thus has a contract with each Primary Policy insurer separate and apart from that of Defendant ACON.

70.     ACON willfully and intentionally interfered with Fiesta's contractual rights under such contracts respecting the Harvey Loss.

71.     As a proximate cause of such interference by ACON, Plaintiff Fiesta has been damaged.

## C.  Tortious Interference with Property Rights

72.     The allegations of paragraphs 1 through 60 are incorporated herein by reference as if set forth fully below.

73.     Plaintiff Fiesta has property rights under the Primary Policies in respect of the Harvey Loss.

74.     Defendant ACON has intentionally interfered with and/or invaded such property rights without just cause or excuse by submitting the Second Proofs and collecting the resulting insurance proceeds under the Primary Policies respecting the Harvey Loss.

75.     This intentional interference and/or invasion has impaired Plaintiff Fiesta's insurance rights under the Primary Policies and its ability to transact business.

76.     As a proximate cause of such interference by ACON, Plaintiff Fiesta has been damaged.

### D. Conversion

77.     The allegations of paragraphs 1 through 60 are incorporated by reference as if set forth fully below.

78.     Plaintiff Fiesta has property rights under the Primary Policies in respect of the Harvey Loss.

79.     Despite being on notice of such property rights of Fiesta, Defendant ACON unlawfully assumed, usurped, and otherwise exercised control over those rights by submitting the Second Proofs and retaining the resulting proceeds under the Primary Policies.

80.     Fiesta has demanded return thereof but ACON has refused.

81.     Defendant has wrongfully converted Fiesta's insurance rights respecting the Harvey Loss and the resulting insurance proceeds. As a result thereof, Fiesta has been damaged.

### VIII. DAMAGES

82.     The allegations of paragraphs 1 through 81 are incorporated by reference as if set forth fully below.

83.     As a consequence of the conduct of Defendant as described herein, Fiesta has suffered damages of not less than $4,780,347, plus costs and interest, as well as attorneys' fees under Section 38.001 of the Texas Civil Practice and Remedies Code.

### IX. CONDITIONS PRECEDENT

84.     Paragraphs 1 through 83 are incorporated by reference as if set forth fully below.

85.     Under Texas Rule of Civil Procedure 54, Plaintiff states that all conditions precedent to its right to recovery have been performed or have occurred.

### X. JURY DEMAND

Fiesta demands a trial by jury with regard to all issues of fact in relation to its claims and causes of action asserted herein or in any amended or supplemental pleading.

## XI. PRAYER

WHEREFORE, Plaintiff respectfully requests that it be awarded actual and/or special damages in excess of the minimal jurisdictional requirements of this Court as requested, as well as pre- and post-judgment interest, costs of court, attorneys' fees, and all other amounts to which Plaintiff is justly entitled, either in law or in equity.

Dated: November 26, 2018.

Respectfully Submitted,

*/s/ Penny P. Reid*
Penny P. Reid
State Bar No. 15402570
preid@sidley.com
Meaghan D. Nowell
State Bar No. 24102288
mnowell@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
(214) 981-3300 (Telephone)
(214) 981-3400 (Facsimile)

-and-

Thomas D. Cunningham
  (*pro hac vice* application to be filed)
tcunningham@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000 (Telephone)
(312) 853-7036 (Facsimile)

**ATTORNEYS FOR PLAINTIFF
FIESTA MART, LLC**

CAUSE NO. 2018-82890

| | | |
|---|---|---|
| Fiesta Mart, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ACON Investments, LLC | § | |
| | § | |
| Defendant. | § | |
| | § | 151ST JUDICIAL DISTRICT |
| | § | |

## MOTION FOR THOMAS D. CUNNINGHAM TO APPEAR
### *PRO HAC VICE* ON BEHALF OF PLAINTIFF

By this application, Plaintiff Fiesta Mart, LLC ("Plaintiff," "Fiesta," or "Fiesta Mart"),

seeks an order admitting Thomas D. Cunningham as counsel *pro hac vice*.

Rule XIX of the Rules Governing Admission to the Texas Bar specifically provides for

the admission of out-of-state counsel to appear before this Court upon written application to

appear as counsel *pro hac vice*. In pertinent part, Rule XIX provides:

> A reputable attorney, licensed in another state or in a foreign jurisdiction
> but not in Texas, who resides outside of Texas may seek permission to
> participate in the proceedings of any particular cause in a Texas court by
> complying with the requirements of Texas Government Code Section
> 82.0361 concerning payment of a non-resident attorney fee to the Board of
> Law Examiners as a mandatory initial requirement. Upon completion of this
> requirement and receipt of an acknowledgment issued by the Board of Law
> Examiners, the non-resident attorney shall file with the applicable Texas
> court a written, sworn motion requesting permission to participate in a
> particular cause.

As set forth in the Verified Application of Thomas D. Cunningham to Appear as Counsel

*Pro Hac Vice*, and the Declaration of Penny P. Reid, Thomas D. Cunningham has been retained

as counsel for Plaintiff and has fulfilled all of the requirements for *pro hac vice* admission as set

forth in Rule XIX of the Rules Governing Admission to the Texas Bar. Granting Plaintiff's application to admit Thomas D. Cunningham *pro hac vice* is necessary and appropriate in these circumstances because Plaintiff has selected Thomas D. Cunningham as its counsel of choice in this matter.

Thomas D. Cunningham is not a resident of Texas and is not regularly employed or engaged in professional or other activities in Texas. Thomas D. Cunningham is a member in good standing of all State Bar Associations of which he is a member.

As reflected in the accompanying proof of service, notice of Thomas D. Cunningham's application for *pro hac vice* is being provided to all parties. The State Bar fee of $250 has been paid to the Texas Board of Law Examiners as required by Rule XIX. *See* Decl. of P. Reid at ¶ 4, Ex. A (proof of payment).

For the reasons stated above, Plaintiff respectfully requests this Court to enter the concurrently filed [Proposed] Order Granting Motion for Thomas D. Cunningham to Appear as Counsel *Pro Hac Vice* on Behalf of Plaintiff.

Dated: November 26, 2018.

Respectfully Submitted,

*/s/ Penny P. Reid*
Penny P. Reid
State Bar No. 15402570
preid@sidley.com
Meaghan D. Nowell
State Bar No. 24102288
mnowell@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
(214) 981-3300 (Telephone)
(214) 981-3400 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**
**FIESTA MART, LLC**

## VERIFIED APPLICATION OF THOMAS D. CUNNINGHAM
## TO APPEAR *PRO HAC VICE* ON BEHALF OF PLAINTIFF

I, Thomas D. Cunningham, declare and state:

1.    I am an attorney at law and hereby request permission, pursuant to Rule XIX of the Rules Governing Admission to the Texas Bar, to appear as counsel for *pro hac vice* for Fiesta Mart, LLC in the above-titled action. I have personal knowledge of the matters stated herein and, if called upon, could and would testify competently thereto.

2.    My office address is SIDLEY AUSTIN LLP, One South Dearborn Street, Chicago Illinois, 60603. My telephone number is 312-853-7594; my fax number is 312-853-7036; and my e-mail address is tcunningham@sidley.com.

3.    I will be associated with licensed Texas attorney, Penny P. Reid, Bar No. 15402570. Ms. Reid's address is SIDLEY AUSTIN LLP, 2021 McKinney Avenue, Suite 2000, Dallas, Texas 75201. Her phone number is 214-981-3300; her fax number is 214-981-3400; and her e-mail address is preid@sidley.com.

4.    In the preceding two years, I have not applied to appear *pro hac vice* in any matter before a Texas state court.

5.    I have been admitted to practice and am a good standing of the Illinois State Bar since November 9, 1995. I have also been admitted to practice and I am in good standing with the U.S. District Court for the Northern District of Illinois since December 20, 1995, the Trial Bar of the U.S. District Court for the Northern District of Illinois since November 10, 2009, and the U. S. District Court for the Western District of Michigan since January 13, 2017.

6.    In the preceding five years, I have not been the subject of disciplinary action by the Bar of courts of any jurisdiction in which I am licensed.

7.      In the preceding five years, I have not been denied admission to the courts of any State or to any federal court.

8.      I am familiar with the State Bar Act, the State Bar Rules, and the Texas Disciplinary Rules of Professional Conduct governing the conduct of members of the State Bar of Texas and will at all times abide by and comply with the same so long as such Texas proceeding is pending and said Applicant has not withdrawn as counsel therein.

**VERIFICATION**

I am the applicant in this matter. I have read the foregoing application and the matters stated in it are true of my own knowledge.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct.

Dated: November 26, 2018

_____
Thomas D. Cunningham

| | | |
|---|---|---|
| Fiesta Mart, LLC | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ACON Investments, LLC | § | |
| | § | |
| Defendant. | § | |
| | § | 151ST JUDICIAL DISTRICT |
| | § | |

## DECLARATION OF PENNY P. REID IN SUPPORT OF MOTION FOR THOMAS D. CUNNINGHAM TO APPEAR *PRO HAC VICE* ON BEHALF OF PLAINTIFF

I, Penny P. Reid, declare and state:

1.      I am an attorney duly admitted to practice before all courts of the State of Texas. I am a partner of Sidley Austin LLP, 2021 McKinney Avenue, Suite 2000, Dallas, Texas 75201, counsel of record for Plaintiff Fiesta Mart, LLC in the above-captioned matter, and I am personally familiar with the matters set forth herein and, if called to testify, could and would competently testify thereto.

2.      I make this declaration in support of the Motion of Plaintiff to have Thomas D. Cunningham admitted *pro hac vice* and associated as counsel to represent Plaintiff in this matter.

3.      I am an active member in good standing of the State Bar of Texas.

4.      Pursuant to Rule XIX of the Rules Governing Admission to the Texas Bar, and as set forth in the attached Exhibit A, the State Bar fee of $250 has been paid to the Texas Board of Law Examiners.

5.      Thomas D. Cunningham is familiar with the facts and issues in this matter.

6. I find that Thomas D. Cunningham is a reputable attorney, and I recommend that Thomas D. Cunningham be granted permission to participate in the above-captioned matter before the Court.

7. I request leave for Thomas D. Cunningham to appear as counsel of record for Plaintiff in all proceedings and matters relating to the above-entitled action in this Court.

I declare under penalty of perjury under the laws of the State of Texas that the foregoing is true and correct.


Dated: November 26, 2018                    */s/ Penny P. Reid*
                                            Penny P. Reid

**CERTIFICATE OF SERVICE**

I hereby certify that, pursuant to Section 17.044 of the Texas Civil Practice and Remedies Code, a true and correct copy of the foregoing document was caused to be served through the Secretary of State of Texas, to be forwarded to Defendant's home office address, 1133 Connecticut Avenue NW, Suite 700, Washington D.C. 20036, by certified mail, return receipt requested.

Dated: November 26, 2018

/s/ *Meaghan D. Nowell*
Meaghan D. Nowell

# EXHIBIT A

# Board of Law Examiners

Appointed by the Supreme Court of Texas

November 20, 2018

Thomas D. Cunningham
Via: E-Mail

Acknowledgment Letter

Non-Resident Attorney Fee

According to Texas Government Code §82.0361, "a nonresident attorney requesting permission to participate in proceedings in a court in this state shall pay a fee of $250 for each case in which the attorney is requesting to participate."

**This Acknowledgement Letter serves as proof that the Board of Law Examiners has received $250 in connection with the following matter:**

> **Non-resident attorney: Thomas D. Cunningham**
>
> **Case: 2018-82890**
>
> **Texas court or body: 151st Judicial District, Harris County**

After satisfying the fee requirement, a non-resident attorney shall file a motion in the Texas court or body in which the non-resident attorney is requesting permission to appear. The motion shall contain the information and statements required by Rule XIX(a) of the Rules Governing Admission to the Bar of Texas. The motion must be accompanied by this Acknowledgment Letter and by a motion from a resident practicing Texas attorney that contains the statements required by Rule XIX(b).

The decision to grant or deny a non-resident attorney's motion for permission to participate in the proceedings in a particular cause is made by the Texas court or body in which it is filed.

For more information, please see Rule XIX of the Rules Governing Admission to the Bar of Texas and §82.0361, of the Texas Government Code, which can be found on the Board's website.

Signed,

Susan Henricks
Executive Director