**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**Houston Division**

| | |
|---|---|
| FIESTA MART, L.L.C., )<br><br>Plaintiff, )<br><br>v. )<br><br>ACON INVESTMENTS, L.L.C., )<br><br>Defendant. ) | Civil Action No. 4:18-cv-04704 |

**DEFENDANT ACON INVESTMENTS, L.L.C.'S MOTION TO DISMISS**
**FOR *FORUM NON CONVENIENS* OR TRANSFER UNDER 28 U.S.C. § 1404(a)**

Of Counsel:  Michael K. Ross
Paul C. Rauser
Alison Van Horn
AEGIS LAW GROUP LLP
801 Pennsylvania Avenue, N.W.,
Suite 740
Washington, D.C. 20004
Tel: (202) 737-3500
Fax: (202) 735-5071
mross@aegislawgroup.com
prauser@aegislawgroup.com
avanhorn@aegislawgroup.com

Robert A. McNiel
State Bar No. 24043814
Paul Green
State Bar No. 24081405
CALHOUN BHELLA & SECHREST 325 N.
Saint Paul Street, Suite 2300
Dallas, Texas 75201
Tel: (214) 981-9200
Fax: (214) 981-9203
rmcniel@cbsattorneys.com
pgreen@cbsattorneys.com
*Counsel for ACON Investments, L.L.C.*

# TABLE OF CONTENTS

                                                                                                    **page**

TABLE OF AUTHORITIES …………………………………………………………......(i)

**INTRODUCTION** ………………………………………………………………….…1

**FACTUAL BACKGROUND** ………………………………………………….…2

    **The Insurance Policies**………………………………………………….…2

    **Hurricane Harvey** ……………………………………………….………...4

    **The Membership Interest Purchase Agreement** ………………………………5

    **The Insurance Proceeds** …………………………………………...……7

    **The Parties' Current Dispute.** …………………………………..…….………7

**ARGUMENT** ……………………………………………………….…9

**I.**   **The MIPA's Forum Selection Clause Applies to Fiesta Mart's Claims and Is Enforceable** ………………………………………………………………10

    **A.**   **Fiesta Mart's Claims Are Within the Scope of the Forum Selection Clause** ….10

    **B.**   **The Forum Section Clause is Enforceable** …………………….…………......12

**II.**  **The MIPA's Forum Selection Clause Binds Fiesta Mart** ..……………………….......13

    **A.**   **Fiesta Mart Was So Closely Related to the MIPA That It Was Foreseeable It Would Be Bound by the Forum Selection Clause** ………….....…14

    **B.**   **Fiesta Mart is Estopped from Asserting It Is Not Bound**…………………….....17

**III.** **ACON Can Enforce the Forum Selection Clause** …………………………….…….....19

**IV.** **Fiesta Mart's Claims Should Be Dismissed for *Forum Non Conveniens*** …………....20

**CONCLUSION** ……………………….……….....…….………………….…….....21

# TABLE OF AUTHORITIES

**page**

*Adelson v. World Transp., Inc.,*
631 F. Supp. 504 (S.D. Fla. 1986) …………………………...….…………………..14

*AI Copeland Invs., L.L.C. v. First Speciality Ins. Corp.,*
884 F.3d 540 (5th Cir. 2018)……………….…………...….…………………….......20

*ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor,*
No. 6562-VCP, 2011 WL 4552508 (Del. Ch. Sept. 14, 2011) ………………….…….…11

*Ashall Homes Ltd. v. ROK Entm't Grp. Inc.,*
992 A.2d 1239 (Del. Ch. 2010) ……………….…….………...….….……………..…19

*Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.,*
*571 U.S. 49,* 134 S.Ct. 568, 187 L. Ed. 2D 487 (2013) ………………….…….…...9, 21

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.,*
240 Fed. Appx. 612, 2007 WL 1425851 (5th Cir. 2007) ……………….......……….9, 13

*Brock v. Entre Computer Ctrs., Inc.,*
740 F. Supp. 428 (E.D. Tex. 1990) ……………….…….………...….….……….......14

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA,*
779 F.3d 214 (3rd Cir. 2015) ……………….…….……......………….......11, 14, 16, 19, 20

*Coastal Steel Corp. v. Tighman Wheelabrator, Ltd.,*
709 F.2d 190 (3rd Cir. 1983), *overruled on other grounds by Lauro Lines v. Chasser,*
490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2D 548 (1989) ………………….…….……14

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells,*
*U.S.,* 9 F.3d 1060 (2d Cir. 1993) ……………….……..………...….….………….......18

*Harland Clarke Holdings Corp. v. Milken,*
997 F. Supp. 2d 561 (W.D. Tex. 2014) ……………….…….……….....……….13, 19

*In re Harris Corp.,*
No. 03-13-00192-CV, 2013 WL 2631700 (Tex. App. June 4, 2013) …………......………11

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas,*
464 F.3d 514 (5th Cir. 2006) ……………….…….………...….….……………...…......17

*Huffington v. T.C. Group, LLC,*
    637 F. 3d 18 (1st Cir. 2011) …………………..…………………......16

*Hugel v. Corp. of Lloyd's,*
    999 F.2d 206 (7th Cir. 1993) …………………..……………..…….…15

*Jordan v. SEI Corp.,*
    No. CIV. A. 96-1616, 1996 WL 296540 (E.D. Pa. June 4, 1996) …………………..……15

*Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.,*
    138 F.3d 160 (5th Cir. 1998) …………………..……………..…….………....……10

*Pinto Tech. Ventures, L.P.,*
    526 S.W.3d 428 (Tex. 2017) …………………..……..……….…………….........19

*Sgic Strategic Global Inv. Capital, Inc. v. Burger King Europe GmbH,*
    2015 WL 12731761 (N.D. Tex. 2015),
    *aff'd in relevant part* 839 F.3d 422 (5th Cir. 2016) …………………..……......….…17, 18

*Smith v. Kenda Capital, LLC,*
    451 S.W.3d 453 (Tex. App. 2014) …………………..……..……….…….........17

*Stephens v. Entre,*
    696 F. Supp. 636 (N.D. Ga. 1988) …………………..……..……….……….......14

*Vloeibare Pret Ltd. v. Lloyd's Register N. Am., Inc.,*
    606 Fed. Appx. 782 (5th Cir. 2015) …………………..……..……….………........17

*In re Weekley Homes, L.P.,* 180 S.W.3d 127 (Tex. 2005)…………………..……….…..…........17

*Wellogix, Inc. v. SAP Am., Inc.,*
    58 F. Supp. 3d 766 (S.D. Tex.), *aff'd* 648 Fed. Appx. 398 (5th Cir. 2016) …………..…10, 12

*Weygandt v. Weco, LLC,*
    C.A. No. 4056-VCS, 2009 WL 1351808 (Del. Ch. May 14, 2009) ……………........…….15

# INTRODUCTION

Through artful pleading, Plaintiff Fiesta Mart, L.L.C. ("Fiesta Mart") seeks to escape a forum selection clause designating courts in the State of Delaware as the exclusive venue for this action. Defendant ACON Investments, L.L.C. ("ACON") owned Fiesta Mart until April 30, 2018, when Bodega Latina Corporation ("Bodega") purchased it pursuant to a Membership Interest Purchase Agreement ("MIPA"). The MIPA specifically identified the seven insurance policies upon which Fiesta Mart bases its claims in this action, and defined obligations as to proceeds paid for losses resulting from Hurricane Harvey. Importantly, the MIPA also contained a valid forum selection clause wherein the parties unequivocally chose Delaware courts as the exclusive venue for their disputes. Fiesta Mart should not be permitted to evade the forum selection clause by omitting any mention of the MIPA.

The MIPA's forum selection clause requires dismissal of this Texas action for *forum non conveniens* because the clause is mandatory, it applies to Fiesta Mart's claims, and it is enforceable. It also binds Fiesta Mart. As the very subject of the transaction at the center of the MIPA and a subsidiary of Bodega as a result of that transaction, Fiesta Mart was so closely related to the MIPA that it was entirely foreseeable it would be bound by its forum selection clause. Fiesta Mart directly benefitted from the MIPA, and in this action asserts claims that cannot be resolved without any reference to the MIPA. Having benefitted from the MIPA and tacitly relied on it to formulate its claims, Fiesta Mart is estopped from denying it is bound by the forum selection clause.

**FACTUAL BACKGROUND**

ACON is a private equity firm with investments in a diverse set of businesses. Declaration of Drew Scielzo ("Decl.") ¶ 2. Through affiliated entities, including Fiesta Holdings Investments, L.L.C., formerly ACON Fiesta Holdings L.L.C. (hereinafter referred to as "Fiesta Holdings"), ACON owned Fiesta Mart until April 30, 2018, when it was sold to Bodega pursuant to the MIPA. Decl. ¶ 3.

**The Insurance Policies**

ACON maintained a program of property insurance policies covering its interests in its various portfolio companies and their businesses, including Fiesta Mart and others such as Funko, LLC, Igloo Products Corp., IWP Holdings, LLC, Refac Holdings, Inc., ACON Suzo-Happ, LLC. Decl. ¶ 4. At the primary level, ACON maintained the following seven policies (each, a "Policy," and jointly, the "Policies"), the rights to and proceeds of which are at issue in this lawsuit:

(i)   Westport Insurance Corporation (Policy no.: NAP 2001214 01);
(ii)  Aspen Specialty Insurance Company (Policy no.: PRAGK1017);
(iii) Arch Specialty Insurance Company (Policy no.: ESP7303053-01);
(iv)  Lloyd's of London (Policy no.: URS 2552391.17);
(v)   Indian Harbor Insurance Company (Policy no.: PRO0047629-01);
(vi)  Allied World Assurance Company (Policy no.: 0310-7409-1A); and
(vii) HDI Global Insurance Company (Policy no.: CPD1488300).

Decl. ¶ 4.

Each Policy provided coverage for property damage and business interruption loss for the period June 1, 2017 through June 1, 2018.  Decl. ¶ 4. Each Policy defined the "Insured" as follows:

> NAMED INSURED - This policy does insure ACON Investments, LLC <u>and as per the attached endorsement schedule</u>, any subsidiary, associated, allied or affiliated company, corporation, firm, organization, partnership, Joint Venture, Limited Liability Company or individual, whether wholly or partially owned or controlled by the Insured, where the Insured maintains an interest, or where the Insured is required to provide insurance, as now exist or are hereafter constituted or acquired, and any other party in interest that is required by contract or other agreement to be named, all hereafter referred to as the "Insured".

(emphasis in original).  Decl. ¶ 5.

The endorsement schedule attached to each Policy designated Fiesta Holdings as the Insured in connection with ACON's portfolio company, Fiesta Mart: "With respects to the entity of, Fiesta Mart, the following terms and conditions shall apply: A. Named Insured -  ACON Fiesta Holdings, LLC."  Decl. ¶ 5.  The attached endorsement schedules designated other ACON subsidiaries as the Insureds with respect to other ACON portfolio companies, but it did not designate any entity other than Fiesta Holdings with respect to Fiesta Mart.  Decl. ¶ 5.

ACON allocated the premium for each Policy among its portfolio companies, including Fiesta Mart.  Decl. ¶ 6.  Each portfolio company sent its allocation to ACON's insurance broker; the insurance broker then paid the premium to the insurance companies directly.  Decl. ¶ 6. The Policies stated that any loss shall be "payable to the Insured, or as directed by them."  Decl. ¶ 6.

**Hurricane Harvey**

On or about August 25, 2017, Hurricane Harvey struck the Houston area, damaging multiple Fiesta Mart grocery stores and supermarkets. Decl. ¶ 8. As the owners of Fiesta Mart at that time, ACON and Fiesta Holdings suffered property damage and business interruption losses resulting from Hurricane Harvey. Decl. ¶ 8. On or about September 26, 2017, ACON and Fiesta Holdings submitted first partial proofs of loss claiming $7.5 million under the Policies. Decl. ¶ 9. Each proof of loss was submitted on behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)," as the Insureds. Decl. ¶ 9. ACON directed the insurance broker to instruct the insurers to make payment directly to Fiesta Mart, which they did in or about the fall of 2017. Decl. ¶ 9.

With the exception of two stores, the physical destruction to Fiesta Mart stores and property was repaired so that, by or about March 2018—and thus, before Bodega acquired Fiesta Mart—-they were in good operating condition and repair and suitable and adequate for continued use in the manner in which they were being used. Decl. ¶ 10.

The damage from Hurricane Harvey resulted in the prolonged closing of two Fiesta Mart stores. Decl. ¶ 10. As of March 2018, one of the stores was expected to reopen, albeit reduced in size, in August or September 2018. Decl. ¶ 10. The impact of Hurricane Harvey on the other store, including whether the lease was terminated by virtue of the Hurricane and who had the financial obligation to restore the premises, was a matter of dispute with the landlord. Decl. ¶ 10.

**The Membership Interest Purchase Agreement**

On or about March 23, 2018, Fiesta Holdings and other ACON affiliated entities entered into a membership interest purchase agreement—the MIPA—with Bodega, pursuant to which Fiesta Holdings and the ACON affiliates agreed to sell their interests in Fiesta Mart Investments, L.L.C., the 100% indirect owner of Fiesta Mart, to Bodega (the "MIPA transaction"). Decl. ¶ 11. The MIPA transaction closed on or about April 30, 2018. Decl. ¶ 11. Notably, Fiesta Holdings—the Insured specified in the Policies with respect to Fiesta Mart—was not transferred to Bodega pursuant to the MIPA transaction. Decl. ¶ 11.

The MIPA disclosed the damage inflicted by Hurricane Harvey on Fiesta Mart stores and business; the state of repair; the fact that two stores were closed; the expectation that one, reduced in size, would reopen; and that the impact of the Hurricane on the lease of the other stores was a matter in dispute with the landlord. Decl. ¶ 12. Neither the proceeds nor claims to the proceeds paid for losses resulting from Hurricane Harvey were conveyed to Bodega pursuant to the MIPA or any other agreement. Pursuant to Article 7.14 of the MIPA, Bodega was obligated to remit, or cause its subsidiaries to remit, to Fiesta Holdings any monies received by it or its subsidiaries pursuant to the Policies with respect to business interruption claims relating to any period prior to closing (April 30, 2018):

> [Bodega] shall, and [Bodega] shall cause its Subsidiaries to, remit to the Fiesta Representative [defined as Fiesta Holdings], within five (5) Business Days following receipt thereof, any monies received on or after the Closing Date by [Bodega] or any of its Subsidiaries pursuant to that certain Property Insurance Policy of Westport Insurance Corporation (Policy Number: NAP 2001214 01); Aspen Specialty Ins Co (Policy Number: PRAGK1017); Arch Specialty Ins. Co (Policy Number: ESP7303053-01);

Lloyd's of London (Policy Number: URS 2552391.17); Indian Harbor Ins Co (Policy Number: PRO0047629-01); Allied World Assurance Co (Policy Number: 0310-7409-1A) and HDI Global Ins Co (Policy Number: CPD1488300), but, in each case, only to the extent pursuant to business interruption claims relating to any period prior to Closing.

MIPA Art. 7.14.

The MIPA also contained a forum selection clause in favor of Delaware courts and a choice of law provision specifying Delaware law. Article 12.13 of the MIPA provided:

Each of the Parties (i) irrevocably submits itself to the personal jurisdiction of all state and federal courts sitting in the State of Delaware . . . in any action, suit or proceeding arising out of or relating to this Agreement, any of the transactions contemplated by this Agreement or any facts and circumstances leading to its execution or performance, (ii) agrees that all claims in respect of any such action, suit or proceeding must be brought, heard and determined exclusively in the Court of Chancery of the State of Delaware (provided that, in the event subject matter jurisdiction is declined by or unavailable in the Court of Chancery, then such action, suit or proceeding will be heard and determined exclusively in any other state or federal court sitting in the State of Delaware), (iii) agrees that it will not attempt to deny or defeat such personal jurisdiction by motion or other request for leave from such courts, (iv) agrees not to bring any action, suit or proceeding against any other Party arising out of or relating to this Agreement, any of the transactions contemplated by this Agreement or any facts and circumstances leading to its execution or performance in any other court . . .

MIPA Art. 12.13.

Article 12.12 of the MIPA provided: "This Agreement and the other Documents delivered pursuant hereto and the legal relations between and among the Parties shall be governed and construed in accordance with the Laws of the State of Delaware without giving effect to its principles of conflict of Laws." MIPA Art. 12.12.

### The Insurance Proceeds

In August 2018, ACON submitted second partial proofs of loss on behalf of itself and Fiesta Holdings claiming $4,780,347 in property damage (after a $250,000 deductible) resulting from Hurricane Harvey under the Policies.  Decl. ¶ 13.  ACON again submitted the proofs of loss on behalf of "ACON Investments, LLC (ACON Fiesta Holdings, LLC)," as the Insureds.  Decl. ¶ 13.  Six of the seven insurance companies paid $4,302,312 to ACON in or about September and October 2018.  Decl. ¶ 13.  ACON has not yet received any monies under the Policies with respect to business interruption losses due to Hurricane Harvey.  Decl. ¶ 13.

By letter, dated October 4, 2018, Bodega's General Counsel requested ACON to wire Hurricane Harvey-related insurance proceeds to a Bodega bank account: "please wire $4,780,347 to Wells Fargo Bank, N.A. . . . Account title: Bodega Latina Corporation."  Decl. ¶ 14.  ACON, invoking the terms of the MIPA, refused by response letter to Bodega, dated October 10, 2018.  Decl. ¶ 14.  Thereafter, on or about November 16, 2018, Bodega caused its subsidiary, Fiesta Mart, to file this action in Harris County, Texas, claiming that ACON wrongfully retains $4,780,347 in insurance proceeds paid pursuant to the Policies and alleging that it (Fiesta Mart) is the Insured under each Policy and entitled to insurance rights and proceeds under Policies covering property damage and business interruption losses resulting from Hurricane Harvey.

### The Parties' Current Dispute

On December 13, 2018, ACON timely removed this action to this Court.  That same day, ACON and Fiesta Holdings filed an action against Bodega in Delaware Superior Court for

breach of the MIPA's forum selection clause, breach of the MIPA's implied covenant of good faith and fair dealing, and declaratory judgment that ACON and Fiesta Holdings are entitled to retain the insurance proceeds relating to Hurricane Harvey under the Policies (the "Delaware action"). Decl. ¶ 15.

As Fiesta Mart's Petition in this action only hints, there is more to its and Bodega's relationship with ACON, both pre- and post-closing, than it actually reveals. The Petition acknowledges that ACON, not Fiesta Mart, was the named Insured under the Policies, *see* Petition ¶ 23, but the Petition thereafter falls short of complete candor. For example,

- Although the Petition avers that Fiesta Mart falls under the definition of "Insured" because it was an ACON subsidiary or affiliate, *see* Petition ¶¶ 23-24, it fails to disclose that the only such entity identified in the requisite "attached endorsement schedule" was Fiesta Holdings, not Fiesta Mart, Decl. ¶ 5.

- Although the Petition alleges that Fiesta Mart was allocated a portion of the premium owed under the Policies, *see* Petition ¶¶ 18-21, it fails to reveal that ACON allocated the premium among its portfolio companies, Decl. ¶ 6.

- Although the Petition discloses that the first proofs of loss list "Fiesta Mart, L.L.C." as the insured's "interest," *see* Petition ¶ 33, it fails to disclose that those same proofs identified the "Insured" as "ACON Investments, LLC (ACON Fiesta Holdings, LLC)," Decl. ¶ 9.

- Although the Petition reveals that the insurance broker directed the insurers to pay the proceeds under the first proofs of loss to Fiesta Mart, *see* Petition ¶¶ 31-36, it fails to disclose that ACON, which still owned Fiesta Mart at the time the first proofs were submitted, specifically directed the insurance broker to pay the proceeds directly to Fiesta Mart and ACON directed Wayne Peterson, who was both CFO of Fiesta Holdings and Fiesta Mart at the time and knowledgeable regarding the damage wrought by Hurricane Harvey, to sign the proofs of loss verifying the damage, Decl. ¶ 9.

The Petition also fails to reveal that this action in Texas is part of a larger dispute between ACON and its affiliates and Bodega and its affiliates, all fallout from the purchase and sale of Fiesta Mart pursuant to the MIPA.  Decl. ¶ 16.

Because the MIPA contains a mandatory forum selection clause making venue exclusive to the Court of Chancery in the State of Delaware, provided it has subject matter jurisdiction, and otherwise to Delaware state and federal courts, this action should be dismissed for *forum non conveniens* in favor of the Delaware courts.  Indeed, Fiesta Mart may obtain complete relief by joining the pending Delaware action brought by ACON against Bodega.  In the alternative, this action should be transferred pursuant to 28 U.S.C. § 1404(a) to federal district court in Delaware.

## ARGUMENT

A federal court applies the federal law of *forum non conveniens* in deciding a motion to dismiss pursuant to a forum selection clause pointing to a state or foreign forum.  *See Atlantic Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.,* 571 U.S. 49, 134 S.Ct. 568, 580, 187 L. Ed. 2d 487 (2013); *Braspetro Oil Servs. Co. v. Modec (USA), Inc.,* 240 Fed. Appx. 612, 615, 2007 WL 1425851, *2 (5th Cir. 2007) ("Federal law applies to determine the enforceability of forum selection clauses in both diversity and federal question cases.").

It is well settled that a valid forum selection clause should be given controlling weight "in all but the most exceptional cases."  *Atlantic Marine,* 134 S.Ct. at 581 (internal quotation marks and citations omitted).  "Such clauses are *prima facie* valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."

*Braspetro,* 240 Fed. Appx. at 615, 2007 WL 1425851, at *2 (internal quotation marks and citation omitted). Before a court can consider enforcing a forum selection clause, however, it must first determine whether the clause applies to the type of claims asserted in the lawsuit. *Braspetro,* 240 Fed. Appx. at 616, 2007 WL 1425851, at *3.

I.      **The MIPA's Forum Selection Clause Applies to Fiesta Mart's Claims and Is Enforceable**

      *A.      Fiesta Mart's Claims Are Within the Scope of the Forum Selection Clause*

The MIPA's forum selection clause applies to Plaintiff's claims. "To determine whether a claim falls within the scope of a forum selection clause a court looks to the language of the contract." *Wellogix, Inc. v. SAP Am., Inc.,* 58 F. Supp. 3d 766, 777 (S.D. Tex.), *aff'd* 648 Fed. Appx. 398 (5th Cir. 2016). The basis for all of Fiesta Mart's claims is that ACON usurped insurance rights and wrongfully retains proceeds paid after ACON sold Fiesta Mart to Bodega. Although Fiesta Mart's claims sound in tort, the broad language of the MIPA's forum selection clause covers such claims.

The MIPA's forum selection clause uses expansive language to require that all claims "arising out of or relating to this Agreement, any of the transactions contemplated by this Agreement or any facts and circumstances leading to its execution or performance" be brought in the Delaware courts. MIPA, Art. 12.13. Courts have construed such "arising out of" or "relating to" language expansively to reach all aspects of the relationship and not just claims dealing directly with the terms of the contract. *See, e.g., Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.,* 138 F.3d 160, 165 (5th Cir. 1998) (holding that when parties agree to

arbitration clause governing "[a]ny dispute . . . arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all aspects of the relationship."); *Carlyle Inv. Management LLC v. Moonmouth Co. SA,* 779 F.3d 214, 220 (3ʳᵈ Cir. 2015) ("If this were not the rule, a plaintiff could easily avoid a forum selection clause by artfully pleading non-contract claims that stem from the contractual relationship"); *ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor,* No. 6562-VCP, 2011 WL 4552508, *5 (Del. Ch. Sept. 14, 2011) ("Broad forum selection clauses, . . . which expressly cover, for example, all claims between the contracting parties that 'arise out of' or 'relate to' a contract, apply not only to claims dealing directly with the terms of the contract itself, but also to 'any issues that touch on contract rights or contract performance.'") (citation omitted); *In re Harris Corp.,* No. 03-13-00192-CV, 2013 WL 2631700, at *4 (Tex. App. June 4, 2013) (concluding that broad forum selection clause, applying to actions "related to" dispute or interpretation of contract, covered non-contractual claims, such as fraud, and listing cases holding same).

Here, Fiesta Mart's claims to insurance rights and proceeds relate to "facts and circumstances leading to [the MIPA]'s execution," MIPA Art. 12.13, because the MIPA specifically identified the seven Policies at issue in this action, *see* MIPA Art. 7.14; the MIPA set forth Bodega's obligation to cause its subsidiary to remit to Fiesta Holdings monies received under those Policies for business interruption claims relating to any period prior to April 30, 2018, *see* MIPA Art. 7.14; and the MIPA specifically disclosed the damage inflicted by Hurricane Harvey on Fiesta Mart stores and business and the state of repair prior to closing, Decl. ¶ 12.

Fiesta Mart's claims also relate to the transaction at the heart of the MIPA—the purchase and sale of Fiesta Mart. But for its sale to Bodega pursuant to the MIPA, Fiesta Mart would still be owned by ACON and there would be no dispute as to who was entitled to the Policies' rights and proceeds. Neither the Policies' proceeds nor claims to the proceeds were transferred to Bodega in connection with the sale of Fiesta Mart pursuant to the MIPA. Fiesta Holdings expressly retained its rights to any business interruption proceeds paid under the Policies for claims relating to any period prior to closing, such as those resulting from Hurricane Harvey. MIPA Art. 7.14. Significantly, Fiesta Holdings, the entity named as the Insured with respect to Fiesta Mart in the endorsement schedule attached to each Policy, was not transferred to Bodega pursuant to the MIPA. Decl. ¶ 11. As a consequence, notwithstanding Fiesta Mart's pleading around the MIPA, Fiesta Mart's claims relate to the MIPA; they would not exist but for the MIPA nor can they be resolved without any reference to it.

### B.    The Forum Selection Clause Is Enforceable

To be enforceable, a forum selection clause must be mandatory, not just permissive. *See Wellogix,* 58 F. Supp. 3d at 779. The MIPA's forum selection clause is mandatory. It evinces the parties' unmistakable intent to make venue and jurisdiction exclusive in the courts of Delaware: "all claims . . . *must* be brought, heard and determined *exclusively* in the Court of Chancery of the State of Delaware," provided the Chancery Court has subject matter jurisdiction, and otherwise "*exclusively* in any other state or federal court sitting in the State of Delaware." MIPA, Art. 12.13 (emphasis added). In the clause, the parties "irrevocably submit[ted]" to the

exclusive jurisdiction and venue of the Delaware courts, and further agreed not to bring an action "in any other court." *Id.*

Forum selection clauses are presumptively enforceable. *See Braspetro,* 240 Fed. Appx. at 615, 2007 WL 1425851, at *2. The presumption of enforceability may be overcome only by a clear showing by the resisting party that the clause is "unreasonable under the circumstances," because it was the product of fraud or overreaching, would deprive a party of his day in court, would unfairly deprive him of a remedy, or would contravene a strong public policy of the forum state. *See Braspetro,* 240 Fed. Appx. at 615. Because there is no basis to find the forum selection clause here "unreasonable under the circumstances," it is enforceable.

## II.    The MIPA's Forum Selection Clause Binds Fiesta Mart

Bodega, Fiesta Mart's parent company, signed the MIPA. Because Fiesta Mart was closely related to the MIPA—its purchase and sale was the subject of the MIPA, it is controlled by a signatory, Bodega, as a result of the MIPA, Bodega undertook obligations on its behalf in the MIPA, and it benefitted from the MIPA—it is bound by the parties' forum selection.[1]

---

[1]     The question of whether federal or state law controls the issue of whether a non-signatory is bound by a forum selection clause is unsettled in the Fifth Circuit. *See, e.g., Harland Clarke Holdings Corp. v. Milken,* 997 F. Supp. 2d 561 (W.D. Tex. 2014) (discussing lack of clarity on issue). Here, either federal or Delaware, rather than Texas, state law applies, because the MIPA contains a choice of law provision requiring the application of Delaware law, without regard for its conflict of law principles. MIPA Art. 12.12. However, because the outcome is the same under federal, Delaware, or Texas law—Fiesta Mart is bound by the forum selection clause—the Court need not engage in a choice of law analysis.

**A.**      **Fiesta Mart Was So Closely Related to the MIPA That It Was Foreseeable It Would Be Bound by the Forum Selection Clause**

Fiesta Mart was so closely related to the MIPA, it was foreseeable it would be bound by the forum selection clause for claims relating to the MIPA, its transactions, and the facts and circumstances leading to its execution. *See Carlyle,* 779 F.3d at 218 (holding that forum selection clauses bind nonsignatories "if they are closely related to the agreement in such a way that it would be foreseeable that they would be bound.").

Fiesta Mart was the very subject of the MIPA transaction. Federal courts have repeatedly held that transaction participants, whether they are parties or non-parties to the contract, benefit from, and are subject to, forum selection clauses. *See Coastal Steel Corp. v. Tighman Wheelabrator, Ltd.,* 709 F.2d 190, (3rd Cir. 1983) (rejecting district court's refusal to enforce forum selection clause based on fact that plaintiff was not party to contract because plaintiff chose to do business with party to contract and it was perfectly foreseeable that contract would provide for litigation in English court), *overruled on other grounds by Lauro Lines v. Chasser,* 490 U.S. 495, 109 S. Ct. 1976, 104 L. Ed. 2d 548 (1989); *Brock v. Entre Computer Ctrs., Inc.,* 740 F. Supp. 428, 430–31 (E.D. Tex. 1990) (holding that non-signatories may be subject to forum-selection clauses if they were transaction participants); *Stephens v. Entre,* 696 F. Supp. 636, 639 (N.D. Ga. 1988) (applying forum selection clause in franchise agreement to all parties regardless of whether they signed agreement); *see Adelson v. World Transp., Inc.,* 631 F. Supp. 504, 508 (S.D. Fla. 1986) (enforcing forum selection clause in Purchase Agreement against non-

signatory managers, operators, and financiers all of whom were alleged to have agreed to defraud plaintiffs in their purchase).

Fiesta Mart was also closely related to the MIPA, because, as a result of the MIPA transaction, Bodega, which was a signatory, now owns and controls Fiesta Mart. Courts have recognized that when a control person agrees to a forum, it is foreseeable that the entities controlled by that person which are involved in the deal will also be bound to that forum. *See, e.g., Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 210 (7th Cir. 1993) (upholding district court's finding that "the corporations owned and controlled by Hugel are so closely related to the dispute that they are equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue"); *Jordan v. SEI Corp.,* No. CIV. A. 96-1616, 1996 WL 296540, *6 (E.D. Pa. June 4, 1996) (holding that company formed by signatory to marketing agreement for purpose of fulfilling signatory's obligations under marketing agreement was bound to forum selection clause in marketing agreement even though company was non-signatory); *Weygandt v. Weco, LLC,* C.A. No. 4056-VCS, 2009 WL 1351808, *5-*6 (Del. Ch. May 14, 2009) ("The rationale for binding [entities controlled by signatory] rests on the public policy that forum selection clauses promote stable and dependable trade relations, and it would be inconsistent with that policy to allow the entities through which one of the parties chooses to act to escape the forum selection clause," and holding that "[b]ecause [non-signatory]'s controller negotiated this arrangement, wherein a dispute foreseeably involving [nonsignatory] . . . had to be brought in Delaware, [nonsignatory] is bound to appear in Delaware.").

Fiesta Mart was closely related to the MIPA for other reasons. Bodega undertook obligations in the MIPA on behalf of itself and its subsidiaries directly related to the claims asserted here, *i.e.,* to cause its subsidiaries to remit business interruption proceeds received under the Policies to Fiesta Holdings, *see* MIPA Art. 7.14. Fiesta Mart also benefitted from the MIPA. As a subsidiary of Bodega, it was a "BLC Indemnitee," as that term was defined in the MIPA, *see* MIPA Art. 11.2(a), and the ACON affiliates agreed to defend, indemnify and hold harmless BLC Indemnitees, including Fiesta Mart, from any actions arising from certain specified breaches of the MIPA. *See* MIPA Art. 11.2.

It would be unreasonable to read the MIPA to permit Bodega to circumvent the forum selection clause by causing its subsidiary—the very entity it acquired pursuant to the MIPA—to sue in Texas court for claims relating to the MIPA and the transaction contemplated therein. Bodega wrote the original demand letter to ACON insisting that the Policies' proceeds be wired to its account. Decl. ¶ 14. When ACON declined, invoking the terms of the MIPA, Decl. ¶ 14, Bodega caused Fiesta Mart to sue in contravention of the forum selection clause. *See Huffington v. T.C. Group, LLC,* 637 F. 3d 18, 21-22 (1st Cir. 2011) (finding forum clause applied, where plaintiff artfully avoided contract claims in pleadings and did not mention purchase agreement that contained forum selection clause, because claims would not have arisen without original purchase contract); *Carlyle,* 779 F.3d at 220 (finding that there would be no claims, nor plaintiff's efforts to be released from them, but for original subscription agreement that contained forum selection clause).

**B.        *Fiesta Mart Is Estopped from Asserting It Is Not Bound***

Fiesta Mart is also bound by the forum selection clause under principles of contract law

which bind a non-signatory to an agreement under a theory of direct-benefits estoppel.  *See*

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514, 520 (5th Cir. 2006) (holding that

non-signatory to contract was bound by contract's forum-selection clause based on estoppel).

Direct-benefits estoppel applies when a non-signatory "ha[s] embraced the contract

despite [its] non-signatory status but then, during litigation, attempt[s] to repudiate the [forum

selection] clause."  *Hellenic,* 464 F.3d at 517-18.   "A non-signatory can embrace a contract in

two ways: (1) by knowingly seeking and obtaining direct benefits from that contract; or (2)

by . . . asserting claims that must be determined by reference to that contract."  *Sgic Strategic*

*Global Inv. Capital, Inc. v. Burger King Europe GmbH,* 2015 WL 12731761, *10 (N.D. Tex.

2015) (internal quotation marks and citations omitted), *aff'd in relevant part* 839 F.3d 422 (5th

Cir. 2016).[2]  Fiesta Mart has "embraced" the MIPA in both ways.

As the subject of the MIPA transaction, Fiesta Mart clearly knew of the MIPA and, as a

Bodega subsidiary and "BLC Indemnitee," benefitted from its indemnification provisions, as

described above.  *See* MIPA Art. 11.2.  *Cf. In re Weekley Homes, L.P.,* 180 S.W.3d 127, 131 (Tex.

2005) ("while the plaintiff never based her personal injury claim on the contract, . . . her

---

[2]        Although the doctrine of direct-benefit estoppel typically applies in the arbitration context, the Fifth
Circuit and Texas courts have held that direct-benefit estoppel may bind a non-signatory to a forum selection clause.
*See Vloeibare Pret Ltd. v. Lloyd's Register N. Am., Inc.,* 606 Fed. Appx. 782, 784 (5th Cir. 2015); *Harland,* 997 F.
Supp. 2d at 574 n.9 (same); *Smith v. Kenda Capital, LLC,* 451 S.W.3d 453, 457-58 (Tex. App. 2014) (holding that
arbitration clauses are specific type of forum selection clause, and thus, direct-benefits estoppel can be applied to
other forum selection clauses as well).

equitable entitlement to . . . contractual benefits prevent[ed] her from avoiding the" arbitration clause); *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir. 1993) (holding that non-signatory affiliate which sued for declaratory judgment that it had right to use trade name was bound by arbitration clause in settlement agreement relating to trade name because it had benefitted by continuing to use trade name).

Fiesta Mart's claims also cannot be determined without reference to the MIPA. Fiesta Mart claims it is entitled to "insurance rights" and "proceeds" under the Policies for the "Harvey Loss." Petition, ¶ 62. It defines Harvey Loss as "property damage and/or business interruption from Hurricane Harvey." Petition ¶ 12. The MIPA, however, expressly obligates Bodega to cause its subsidiary to remit to Fiesta Holdings, an ACON affiliate, any monies received under those Policies for business interruption claims. MIPA Art. 7.14. Thus, Fiesta Mart's claims to the rights and proceeds of ACON's program of Policies following its sale to Bodega are so intertwined with the MIPA, and Bodega's rights and obligations under the MIPA, that it would be inequitable to allow Fiesta Mart to formulate those claims against ACON in contravention of the MIPA's forum selection clause. *See, e.g., Sgic,* 2015 WL 12731761, at *10–11 (holding that plaintiff non-signatories to franchise agreements could not escape application of forum selection clause because they directly benefited from Defendant's performance under franchise agreement, because although they did not own franchises, they had stake in franchisees, and because their claims could not be resolved without referring to franchise agreements to determine whether they required Defendant's consent to sale of their interests).

Either way—as a closely related transaction participant or under a theory of estoppel—Fiesta Mart is bound by the MIPA's forum selection clause.

### III.  ACON Can Enforce the Forum Selection Clause

ACON was also so closely related to the MIPA signatories on the sellers' side—Fiesta Holdings and the other ACON affiliates—that it may enforce the forum selection clause. A transaction participant may enforce a forum-selection clause even if it is not the actual signatory to the contract when it is "closely related to the contractual relationship" so that its enforcement of the clause would be foreseeable to the opposing party. *Pinto Tech. Ventures, L.P.*, 526 S.W.3d 428, 444 & n.68-69 (Tex. 2017) (listing cases); *Carlyle,* 779 F.3d at 219 ("A non-signatory has standing to invoke a forum selection clause when it is 'closely related to one of the signatories such that the non-party's enforcement of the clause is foreseeable by virtue of the relationship between the signatory and the party sought to be bound.'") (*quoting Ashall Homes Ltd. v. ROK Entm't Grp. Inc.,* 992 A.2d 1239, 1249 (Del. Ch. 2010)).

Here, all of the seller signatories to the MIPA were ACON affiliates. ACON substantially participated in the negotiations leading up to the MIPA. Decl. ¶ 11. Fiesta Mart itself was an ACON affiliate until it was sold to Bodega pursuant to the MIPA. Decl. ¶ 3. ACON directly benefitted from the MIPA as its indemnification provisions extended beyond the signatories to subsidiaries and affiliates, and thus included ACON. MIPA Art. 11.2(b). As an active participant in the MIPA transaction, ACON's enforcement of the forum selection clause was entirely foreseeable to both its affiliate, Fiesta Mart, and Bodega. *See Harland Clarke Holdings Corp. v.*

*Milken,* 997 F. Supp. 2d 561, 585-86 (W.D. Tex. 2014) (enforcing forum selection clause by non-signatory against another non-signatory); *Carlyle*, 779 F.3d at 219-220 (same).

## IV.  Fiesta Mart's Claims Should Be Dismissed for *Forum Non Conveniens*

Because the forum selection clause points to a nonfederal forum—the Court of Chancery in the State of Delaware—this action should be dismissed on the grounds of *forum non conveniens.*  "The existence of a mandatory, valid and enforceable forum-selection clause means that [a court should] afford no weight to plaintiff's choice of forum and consider only the following public-interest factors: (1) administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty."  *AI Copeland Invs., L.L.C. v. First Speciality Ins. Corp.,* 884 F.3d 540, 545 (5th Cir. 2018).   These factors justify a refusal to enforce a forum selection clause only in "truly exceptional cases." *Id.* (internal quotation marks and citation omitted).

None of these factors warrant disregarding the forum selection clause here.  Because the clause is mandatory, valid, enforceable, and no extraordinary factors exist to disregard it, this action should be dismissed for *forum non conveniens*.

In the alternative, or should it be determined that subject matter jurisdiction in the Delaware Court of Chancery is unavailable, the action should be dismissed for *forum non*

*conveniens* in favor of the state courts in Delaware, or transferred to federal court in the District of Delaware pursuant to 28 U.S.C. § 1404(a), which the Supreme Court has recognized as codifying the doctrine of *forum non conveniens* "for the subset of cases in which the transferee forum is within the federal court system," *Atlantic Marine,* 134 S. Ct. at 579-80.

## CONCLUSION

For the foregoing reasons, this action should be dismissed on the grounds of *forum non conveniens* in favor of the state courts of Delaware, or alternatively transferred to federal district court in the District of Delaware pursuant to 28 U.S.C. § 1404(a).

Dated:  December 20, 2018

Respectfully submitted,

/s/ Robert A. McNiel
Robert A. McNiel
State Bar No. 24043814
Paul Green
State Bar No. 24081405
CALHOUN BHELLA & SECHREST 325 N. Saint Paul Street, Suite 2300 Dallas, Texas 75201
Tel: (214) 981-9200
Fax: (214) 981-9203
rmcniel@cbsattorneys.com
*pgreen@cbsattorneys.com*
*Counsel for ACON Investments, L.L.C.*

Of Counsel:   Michael K. Ross
Paul C. Rauser
Alison Van Horn
AEGIS LAW GROUP LLP

801 Pennsylvania Avenue, N.W., Ste. 740
Washington, D.C. 20004
Tel: (202) 737-3500
Fax: (202) 735-5071
mross@aegislawgroup.com
prauser@aegislawgroup.com
avanhorn@aegislawgroup.com

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that a true and correct copy of the foregoing instrument has been served on all counsel of record that have consented to be served pursuant to the Court's ECF system and pursuant to the Electronic Filing Procedures on December 20, 2018.

<u>/s/</u> Robert A. McNiel
