**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
Houston Division**

| | | |
|---|---|---|
| FIESTA MART, L.L.C., | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 4:18-cv-04704 |
| | § | |
| v. | § | Judge Ewing Werlein, Jr. |
| | § | |
| ACON INVESTMENTS, LLC, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF FIESTA MART L.L.C.'S RESPONSE
TO DEFENDANT'S MOTION TO DISMISS FOR *FORUM NON CONVENIENS*
OR TRANSFER UNDER 28 U.S.C. § 1404(a)**

Penny P. Reid
State Bar No. 15402570
Fed. Bar No. 23583
preid@sidley.com
Tiffanie N. Limbrick
State Bar No. 24087928
Fed. Bar No. 2799856
tlimbrick@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

Thomas D. Cunningham
(*pro hac vice* application pending)
tcunningham@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Plaintiff Fiesta Mart, L.L.C.*

## TABLE OF CONTENTS

NATURE OF PROCEEDING AND ARGUMENT SUMMARY ...................................................1

STATEMENT OF THE ISSUES.................................................................................................4

FACTUAL BACKGROUND .....................................................................................................5

PROCEDURAL HISTORY........................................................................................................8

STANDARD OF REVIEW ........................................................................................................9

ARGUMENT ............................................................................................................................9

I.   THE PLAIN LANGUAGE OF THE FORUM SELECTION CLAUSE
     DEMONSTRATES NO INTENT TO APPLY TO NONPARTIES FIESTA OR
     ACON .........................................................................................................................10

     A.   The Delaware Forum Selection Clause Is Limited to "the Parties."......................11

     B.   The Forum Selection Clause Expressly Identifies the Narrow Group of Nonparties
          to Which It Applies, Which Does Not Include Fiesta or ACON ...........................12

     C.   Other MIPA Terms Make Clear When The Drafters Did – and Did Not – Intend
          to Convey Rights to Third Parties......................................................................13

II.  ACON FAILS TO PROVE ANY EXCEPTION APPLIES TO THE GENERAL RULE
     THAT NONSIGNATORIES MAY NOT ENFORCE A CONTRACT...........................14

     A.   The "Closely Related" Theory Is Meritless .........................................................15

     B.   Direct Benefits Estoppel Does Not Apply ...........................................................17

III. NONSIGNATORY ACON LACKS AUTHORITY TO ENFORCE THE DELAWARE
     FORUM SELECTION CLAUSE. ................................................................................20

IV.  THE TEXAS CLAIMS ARE BEYOND THE SCOPE OF THE FORUM SELECTION
     CLAUSE. ....................................................................................................................20

V.   AN INTERESTS ANALYSIS UNDER BOTH FORUM NON CONVENIENS AND
     § 1404(A) SHOWS THAT TEXAS IS THE PROPER FORUM....................................22

     A.   ACON Fails to Establish that Dismissal or Transfer Is Warranted ......................22

          1.   Public Interest Factors Weigh In Favor of Texas ......................................23
          2.   Private Interest Factors Weigh In Favor of Texas .....................................24

CONCLUSION........................................................................................................................25

## <u>Table of Authorities</u>

**Page(s)**

### <u>Cases</u>

*A2D Tech. Inc. v. MJ Sys., Inc.*,
   269 F. App'x 537 (5th Cir. 2008) ........................................................................11

*ACON Inv., L.L.C., et al. v. Bodega Latina Corp.*,
   No. N18C-12-147 EMD................................................................................9

*ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained*
   *Annuity Tr.*, No. CIV.A. 6562-VCP, 2011 WL 4552508
   (Del. Ch. Sept. 14, 2011) ...................................................................................16

*Ashall Homes Ltd. v. ROK Entm't Grp. Inc.*,
   992 A.2d 1239 (Del. Ch. 2010)...........................................................................16

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
   571 U.S. 49 (2013).........................................................................9, 16, 22

*Ball Up, LLC v. Strategic Partners Corp.*,
   No. 02-17-00197-CV; 02-17-00198-CV, 2018 WL 3673044
   (Tex. App.—Fort Worth Aug. 2, 2018, no pet.) ....................................10, 14, 15

*Baty v. ProTech Ins. Agency*,
   63 S.W.3d 841 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ..................11

*Black v. Diamond Offshore Drilling, Inc.*,
   551 S.W.3d 346 (Tex. App.—Houston [14th Dist.] 2018, no pet.)...................13, 15

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
   345 F.3d 347 (5th Cir. 2003) ...................................................................10, 15, 18

*Brock v. Entre Computer Ctrs., Inc.*,
   740 F. Supp. 428 (E.D. Tex. 1990)......................................................................16

*Bruce v. NOMAC Drilling LLC*,
   No. 2:10-cv-204-DF-CE, 2011 WL 749756 (E.D. Tex. Feb. 24, 2011)..................24

*Carlile Bancshares, Inc. v. Armstrong*,
   No. 02-14-00014-CV, 2014 WL 3891658
   (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) ..............................................19, 20

*Carlyle Investment Management v. Moonmouth*,
   779 F.3d 214 (3d Cir. 2015)................................................................................14

*Carr v. Main Carr Dev., LLC*,
　337 S.W.3d 489 (5th Cir. 2011)..................................................................................20

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd*,
　709 F.2d 190 (3d Cir. 1983) *overruled on other grounds*,
　*Lauro Lines v. Chasser*, 490 U.S. 495 (1989) .......................................................16

*Collins v. Mary Kay, Inc.*,
　874 F.3d 176 (3d Cir. 2017)...................................................................................9, 10

*DTEX, LLC v. BBVA Bancomer, S.A.*,
　508 F.3d 785 (5th Cir. 2007) .........................................................................9, 23, 25

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,*
　*S.A.S.*, 269 F.3d 187 (3d Cir. 2001) .....................................................11, 15, 16, 20

*Eolas Tech., Inc. v. Adobe Sys., Inc.*,
　No. 6:09-CV-446, 2010 WL 3835762 (E.D. Tex. Sept. 28, 2010)........................23

*Festor v. Wolf*,
　647 F. Supp. 2d 750 (W.D. Tex. 2009)...............................................5, 22, 23, 24

*Fujitsu Ltd. v. Tellabs, Inc.*,
　639 F. Supp. 2d 761 (E.D. Tex. 2009) ..................................................................24

*G.T. Leach Builders, LLC v. Sapphire V.P., LP*,
　458 S.W.3d 502 (Tex. 2015)...................................................................................21

*Harland Clarke Holdings v. Milken*,
　997 F. Supp. 2d 561 (W.D. Tex. 2014)................................................................14

*Hellenic Inv. Fund, Inc. v. Det Norske Veritas*,
　464 F.3d 514 (5th Cir. 2006) ................................................................................18

*Highlands Ins. Co. v. City of Galveston*,
　721 S.W.2d 469 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) ..........17

*Hill v. G.E. Power Sys., Inc.*,
　282 F.3d 343 (5th Cir. 2002) ................................................................................18

*Jordan v. SEI Corp.*,
　No. 96-1616, 1996 WL 296540 (E.D. Pa. June 4, 1996)........................................16

*JPT Grp., LLC. v. Steven Madden Retail, Inc.*,
　No. CV H-15-3264, 2016 WL 3523878 (S.D. Tex. June 28, 2016)........................25

*In re Kellogg Brown & Root, Inc.*,
　166 S.W.3d 732 (Tex. 2005)...............................................................................4, 21

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
   313 U.S. 487 (1941)............................................................................10

*Lujan v. Alorica*,
   445 S.W.3d 443 (Tex. App.—El Paso 2014, no pet.)...............................9

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
   909 F.3d 48 (3d Cir. 2018)..............................................................15, 16

*In re Merrill Lynch Tr. Co. FSB*,
   235 S.W.3d 185 (Tex. 2007)...............................................................16

*In re Morgan Stanley & Co., Inc.*,
   293 S.W.3d 182 (Tex. 2009)...............................................................19

*Paragon Litig. Tr. v. Noble Corp. (In re Paragon Offshore PLC)*,
   588 B.R. 735 (Bankr. D. Del. 2018) ...................................................13

*Pinto Tech. Ventures, L.P. v. Sheldon*,
   526 S.W.3d 428 (Tex. 2017)........................................................ *passim*

*Piper Aircraft Co. v. Reyno*,
   454 U.S. 235 (1981).................................................................23, 24, 25

*Potomac Ins. Co. v. Woods*,
   1:95-CV-469, 1996 WL 450687 (E.D. Tex. July 22, 1996) ...............17, 21

*Seidensticker v. Gasparilla Inn, Inc.*,
   No. CIV.A. 2555-CC, 2007 WL 4054473 (Del. Ch. Nov. 8, 2007) ........13

*SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Eur. GMBH*,
   No. 3:14-cv-3300-B, 2015 WL 12731761 (N.D. Tex. Aug. 26, 2015),
   *aff'd*, 839 F.3d 422 (5th Cir. 2016) ................................................18, 19

*Smith v. Kenda Capital, LLC*,
   451 S.W.3d 453 (Tex. App.—Houston [14th Dist.] 2014, no pet.)........19

*Stephens v. Entre Computer Ctrs., Inc.*,
   696 F. Supp. 636 (N.D. Ga. 1988) ......................................................16

*Taylor v. Inv'rs Assocs., Inc.*,
   29 F.3d 211 (5th Cir. 1994) ...............................................................11

*Torrington Co. v. Stutzman*,
   46 S.W.3d 829 (Tex. 2000)................................................................10

*Unijax, Inc. v. Factory Ins. Ass'n*,
   328 So. 2d 448 (Fla. App. Ct. 1976).....................................................22

*USHealth Grp., Inc. v. South*,
   636 F. App'x 194 (5th Cir. 2015) ........................................................17

*Vloeibare Pret v. Lloyd's Register N. Am.*,
   606 F. App'x 782 (5th Cir. 2015) ........................................................19

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ...............................................................22

*Weber v PACT XPP Tech., AG*,
   811 F.3d 758 (5th Cir. 2011) ...............................................................9

*In re Weekley Homes, L.P.*,
   180 S.W.3d 127 (Tex. 2005).................................................................20

*Weygandt v. Weco, LLC*,
   C.A. No. 4056-CVS, 2009 WL 1351808 (Del. Ch. May 14, 2009) ......................16

## Statutes/Rules

28 U.S.C. § 1404(a) ...........................................................................1, 5, 22

Fed. R. Civ. P. 12(a) ...........................................................................1

## Other Authorities

Del. Judiciary, *Ann. Report*, 27 (2017) .............................................................24

Pursuant to Rule 12(a) of the Federal Rules of Civil Procedure, Plaintiff Fiesta Mart, L.L.C. ("Fiesta") respectfully submits this response and the accompanying declarations of Jack Hook ("Hook Decl.") and Stacy Walker ("Walker Decl.") in response to Defendant ACON Investments, LLC's ("ACON") Motion to Dismiss for *Forum Non Conveniens* or Transfer Under 28 U.S.C. § 1404(a) (the "Motion").

## NATURE OF PROCEEDING AND ARGUMENT SUMMARY

This is a tort action arising out of Hurricane Harvey.  Houston-based plaintiff Fiesta suffered enormous damage to its stores in 2017 from Harvey.  It sought insurance recoveries under property policies that were in place during Harvey, covered Fiesta, and for which Fiesta paid the subject premium.  Fiesta falls within the expansive definition of "Insured" under the policies and over 70 certificates of insurance identify it as the "Insured" thereunder. Nonetheless, after having sold Fiesta to a third party, defendant ACON, in August 2018, submitted a claim under the policies for $4,780,347 for property damage indisputably suffered by Fiesta, and pocketed the money.  This suit seeks return of that money.

ACON moves to dismiss or transfer the action to Delaware.  It does so on the sole basis that the Membership Interest Purchase Agreement ("MIPA") by which Fiesta was sold contains a forum selection clause that it contends applies here.  ACON is wrong for two reasons.  First, the forum selection clause upon which ACON relies does not apply to the parties to this action. Second, even if it did apply to the parties to this action, it does not encompass the subject claims.

First, the parties.  The Delaware forum selection clause states that "[e]ach of the Parties" agrees to submit resolution of covered dispute to the state of Delaware.  MIPA § 12.13(a). "Parties" is a defined term meaning Bodega Latina Corporation ("Bodega") and certain selling parties controlled by ACON.  Notably, that definition does not include either ACON or Fiesta. On its face then, neither ACON nor Fiesta is entitled to invoke the subject clause.

Nor can ACON claim that the MIPA parties intended it to have rights under the forum selection clause.  Section 12.1 of the MIPA provides that "nothing in this Agreement shall provide any benefit to any third party or entitle any third party to any claim, cause or action, remedy, or right of any kind," except as expressly provided.  *See* MIPA § 12.1.  That section identifies the sole category of nonparties entitled to enforce Section 12.13(a), namely, the "Debt Financing Sources."  The Debt Financing Sources are the lenders financing the transaction contemplated by the MIPA, and does not include ACON or Fiesta.  Thus, neither party to this action is a third-party beneficiary encompassed by the forum selection clause at issue.  ACON's papers cite a different portion of the third-party beneficiary clause, but not the portion specifying who is an intended third-party beneficiary under the forum selection clause at issue.

Indeed, the complete text of Section 12.13(a) eviscerates ACON's argument.  In a portion not cited by ACON, Section 12.13(a) selects a second forum, New York, for resolution of certain other disputes.  That New York forum prong, however, extends solely to suits against a "Debt Financing Source."  Thus, the clause expressly identifies the sole nonparty entitled to enforce its terms, a category to which neither ACON nor Fiesta belongs.  The structure and language of Section 12.13(a) – limiting the Delaware prong to the "Parties" while extending the New York prong to an express group of nonparties which exclude ACON and Fiesta – could hardly be a clearer expression of contractual intent.  The full text of Section 12.13(a) dooms ACON's argument, yet it makes no appearance in ACON's papers.  This is a recurring theme in ACON's Motion.  ACON may ignore inconvenient facts and law, but they will not go away.

ACON's Motion suffers from a second fatal flaw, namely that the subject claims fall outside of its scope.  Contrary to ACON's assertions, Fiesta's claims belong to Fiesta, not its parent, Bodega.  The rights that Fiesta seeks to vindicate – its insurance rights under the subject

insurance and proceeds therefrom – arose when Harvey devastated Fiesta's stores in 2017, a time when Fiesta and Bodega were strangers.  Fiesta's rights derive from its coverage under the subject insurance policies, under which Bodega makes no claim.  Fiesta's insurance rights thus belong to Fiesta, not its current or prior corporate parent.

As a fallback, ACON contends that Fiesta's insurance "cannot be resolved" without application of Section 7.14 of the MIPA.  But that provision calls for one nonparty to this suit to pay another nonparty to this suit any *business interruption* insurance monies received under the subject policies.  Here, Fiesta's claims for rights and proceeds concern *property damage*, not business interruption.  To be sure Fiesta suffered losses of both types, and Fiesta discusses both in its Petition as they inform the analysis of whether Fiesta is an insured.  But the Petition does not seek business interruption insurance recoveries.  (To the extent that is not clear, Fiesta is willing to stipulate with ACON to that effect.)  It would be a fight over nothing in any event.  Neither Fiesta nor its parent have received any business interruption insurance payments.  Only if such payments are received, and then not forwarded on, could Section 7.14 be implicated.  ACON's Section 7.14 argument is thus a red herring, and an unripe one to boot.

Ignoring the controlling contract language, ACON instead spins legal theories of estoppel and agency to seek standing to invoke the forum selection clause of a contract to which it is not a party.  But those theories must be applied under ordinary state contract law to ascertain the parties' intent respecting application of the clause.  Here, that intent is clear.  The MIPA expressly identifies the sole group of nonparties that may enforce any part of the forum selection clause – Debt Financing Sources – and expressly disclaims all others.  Under these circumstances, allowing nonparties outside that group to enforce the clause would contravene the expressed intent of the parties to the MIPA.

Finally, even if the forum selection clause did apply here, the Court still must weigh the public interest factors of the *forum non conveniens* analysis, which favor Texas.

In sum, the MIPA's plain language makes clear which narrow group of nonparties may invoke the forum selection clause, and neither ACON nor Fiesta fall within that group.  Nor does the clause or any other part of the MIPA extend to the property damage claims at issue here. Wrong parties, wrong claims.  Accordingly, ACON's Motion should be denied.

## <u>STATEMENT OF THE ISSUES</u>

**1)**  Should ACON be allowed to enforce a forum selection clause against Fiesta, where (a) the clause is limited to the "Parties" and neither falls within that definition, (b) the clause expressly identifies the group of nonparties entitled to enforce its terms, and (c) neither ACON nor Fiesta falls within that group of nonparties or the group of intended third-party beneficiaries thereof?

**Short Answer:**  No.  Where parties to a forum selection clause expressly identify the group of nonparties that may enforce its terms and disclaim any other third-party beneficiaries thereof, allowing nonparties outside that group to enforce the clause would contravene the parties' expressed intent and is, thus, impermissible.  *Pinto Tech. Ventures, L.P. v. Sheldon*, 526 S.W.3d 428, 445 (Tex. 2017) ("*Pinto*").

**2)**  Even if both plaintiff and defendant are parties to a contract with a forum selection clause, do claims that do not rely upon that contract and could be brought independent of it "arise out of" or "relate to" the contract so as to fall within the scope of that clause?

**Short Answer:**  No.  Claims that stand independently of a contract and will not be determined by reference to the contract do not arise out of or relate thereto.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005).  Here, Fiesta's claim concerns insurance rights

and proceeds for property damage payments currently totaling $4,780,327.  Such claim is independent of and will not be determined by reference to the MIPA.

**3)**  If the answers to 1 and 2 above were yes instead of no, has ACON shown that the public interest factors of *forum non conveniens* and 28 U.S.C. § 1404(a) justify dismissal or transfer of this action, when ACON simply lists those factors and claims "none warrants disregarding" the forum selection clause?

**Short Answer:**  No.  Even if a forum selection clause is valid and applicable, the public factors must still be examined to determine if dismissal or transfer is warranted.  *See Festor v. Wolf*, 647 F. Supp. 2d 750, 754 (W.D. Tex. 2009).  Failure to adduce any evidence thereof warrants denial of the motion.  *Id.* at 756-59 (denying dismissal for *forum non conveniens* because movant failed to present evidence and thus burden of proof was not satisfied).

**4)**  Where Fiesta, a company headquartered in Texas, brought Texas tort claims concerning the theft of insurance proceeds related to property damage from Hurricane Harvey, do the private interest factors support transfer of this Texas case to Delaware?

**Short Answer:** No.  The case should remain before this Court because the majority of evidence and witnesses are located in Texas, and the claims have strong fact-based ties to Texas.

## FACTUAL BACKGROUND

Fiesta is a Houston-based operator of grocery stores.  First-Am. Pet. ("Pet.") ¶ 9.  Prior to April 30, 2018, it was indirectly owned by Fiesta Holdings Investments, L.L.C. ("Fiesta Holdings"), an entity ultimately controlled by ACON, a private equity concern.  *Id.* ¶¶ 46-47; *see also* Hook Decl. ¶ 3 and Ex. A thereto at Recitals.

On or about August 25, 2017, Hurricane Harvey made landfall in Houston, causing extensive damage and interruption of business at several Fiesta stores (the "Harvey Loss"), some of which remain closed to this day.  Pet. ¶¶ 10-12.  Fiesta paid to repair the stores.  *Id.* ¶¶ 11-14.

At the time, Fiesta was insured under several property insurance policies (the "Primary Policies"). *Id.* ¶¶ 14, 18; Walker Decl. ¶ 5. Fiesta paid the premium allocated to it for coverage under the Primary Policies, fell within the definition of "Insured" in the Primary Policies, and was identified as the "Insured" on over 70 Certificates of Insurance issued under the Primary Policies. Pet. ¶¶ 16-26.

On behalf of Fiesta, Mr. Wayne Peterson, Vice President and CFO of Fiesta,[1] submitted in September 2017 initial partial proofs of loss to insurers on the Primary Policies for property damage caused by Hurricane Harvey (the "First Proofs"). *Id.* ¶ 31. The insurers paid Fiesta $7.5 million for property damage in connection with the First Proofs. *Id.* ¶ 36. In addition to property damage, the Primary Policies insured Fiesta for business interruption loss. *Id.* ¶¶ 14-15, 39. Business interruption losses are limited to loss from "interruption of business conducted by the *Insured*." *Id.* ¶¶ 38-39 (emphasis added). It is undisputed that Fiesta, not ACON, conducted business at the affected stores. *Id.* ¶ 41; Walker Decl. ¶¶ 4, 12. These and other facts, Fiesta contends, show it was an Insured under the Primary Policies.

### A.    The Membership Interest Purchase Agreement

On March 23, 2018, Fiesta Holdings, ACON Fiesta Aggregator A L.L.C., and ACON Fiesta Aggregator B, L.P. (collectively, "Sellers") executed the MIPA with Bodega for the sale of Fiesta. Hook Decl. at Ex. A. The MIPA defined the "Parties" as "BLC [Bodega] and the Sellers." *Id*. at Ex. A, § 1.1. Neither ACON nor Fiesta falls within the definition of "Parties."

---

[1] The Motion contends that Mr. Peterson submitted the First Proofs for Fiesta Holdings and not Fiesta in part because he held CFO titles with both entities. Mot. at 8. While Fiesta does not contest that both were insureds under the Primary Policies, it was Fiesta that suffered the loss and on whose behalf Mr. Peterson submitted the First Proofs. Pet. ¶¶ 31-33. Moreover, Mr. Peterson put a second title, Vice President, on the First Proofs. Pet. ¶ 31. Mr. Peterson was a Vice President with Fiesta (Pet. ¶ 31); ACON makes no similar claim as to Fiesta Holdings.

1.      *The Delaware Prong of the Forum Selection Clause*

Section 12.13(a) of the MIPA contains a two-pronged forum selection clause (the "Forum

Selection Clause").  The first prong provides for a Delaware forum respecting certain claims.  In

pertinent part it provides:

> Each of the ***Parties*** (i) irrevocably submits itself to the personal jurisdiction of all
> state and federal courts sitting in the State of ***Delaware*** . . . in any action, suit or
> proceeding arising out of or relating to this Agreement, any of the transactions
> contemplated by this Agreement or any facts and circumstances leading to its
> execution or performance . . . .

Hook Decl. at Ex. A, § 12.13(a) (emphasis added).

2.      *The New York Prong of the Forum Selection Clause*

The second prong calls for a New York forum respecting certain other claims

involving an identified group of nonparties, the Debt Financing Source.  It provides:

> ***[N]o party hereto, nor any of its Affiliates***, will bring, or support the bringing of,
> any claim, whether at law or equity, whether in contract, tort or otherwise, ***against***
> ***any Debt Financing Source*** in any way relating to this Agreement or any of the
> transactions contemplated by this Agreement, including any dispute arising out of
> or relating in any way to the Debt Commitment Letter or the performance thereof,
> anywhere other than in (x) any ***New York*** State court sitting in the County of New
> York or (y) the United States District Court for the Southern District of New York.

*Id.* (emphasis added).  "Debt Financing Source" is defined as the Persons which have committed

to providing the debt financing for the transactions contemplated by the MIPA.  *Id.* at Ex. A,

§ 1.1.  "Affiliate" is defined in pertinent part as any "Person that directly or indirectly controls, is

controlled by or is under direct or indirect control" of another "Person."  *Id.* "Person" is defined

in part as a "corporation…a limited liability company,…or any other entity or organization."  *Id.*

Thus, neither ACON nor Fiesta is a Debt Financing Source, while both were an Affiliate.

The MIPA also contains a "no third-party beneficiaries" clause, which provides:

12.1.  ***No Third Party Beneficiaries***.  Except to the extent expressly set forth herein,
including this <u>Section 12.1</u>, nothing in this Agreement shall provide any benefit to
any third party or entitle any third party to any claim, cause of action, remedy or

right of any kind, it being the intent of the parties that this Agreement shall not be construed as a third party beneficiary contract; provided, ***however, that … (b) the provisions of Sections … 12.13(a) … shall be enforceable by each of the Debt Financing Sources*** and each is an intended third party beneficiary thereof.

*Id.* at Ex. A, § 12.1 (emphasis added).  The MIPA closed on April 30, 2018.  *Id.* ¶ 2.

Section 7.14 of the MIPA calls for Bodega to forward to Fiesta Holdings pre-closing insurance payments for business interruption claims under the Primary Policies received by Bodega or its Subsidiaries.  *Id.* at Ex. A, § 7.14.  No similar requirement is stated for property damage claims.  Neither Bodega nor Fiesta has received any business interruption recoveries under the Primary Policies.  Walker Decl. ¶ 14; Hook Decl. ¶ 5.[2]

**B.     Subsequent Events.**

In August 2018, after it had sold Fiesta, ACON sought and received from the Primary Policy insurers of $4,780,347 for property damage to Fiesta stores from Hurricane Harvey.  Pet. ¶¶ 48-57.  When it learned of this, Fiesta wrote to ACON seeking recovery of "a payment from insurers of Fiesta Mart for $4,740,347 for property damage to various Fiesta Mart stores from Hurricane Harvey."  *Id.* ¶ 58; Walker Decl. at Ex. A.  Fiesta asked that ACON wire the money to "Fiesta Mart, LLC."  Walker Decl. at Ex. A.  ACON refused, and this suit ensued.  Pet. ¶ 59.

## PROCEDURAL HISTORY

On November 16, 2018, Fiesta sued ACON in state court in Harris County, Texas, asserting claims of unjust enrichment, tortious interference with Fiesta's insurance contracts, tortious interference with property rights, and conversion (the "Texas Claims").  The Petition seeks recovery for the property damage component of the Harvey loss, totaling "not less than $4,780,347."  The Petition does not seek business interruption amounts respecting that loss, nor

---

[2] Apparently, neither has ACON.  *See* Mot. at 7.

have any such monies been received.  Hook Decl. ¶ 5; Walker Decl. ¶ 14; Mot. at 7.

On December 13, 2018, ACON removed the case to this Court and, along with Fiesta Holdings, filed suit in Delaware state court against Bodega.  The Delaware suit asserts breach of the MIPA and breach of the implied covenant of good faith and fair dealing, both based on Bodega allegedly directing Fiesta to file this suit, and a declaration that ACON is the insured under the Primary Policies.  *See ACON Inv., L.L.C., et al. v. Bodega Latina Corp.*, No. N18C-12-147 EMD CCLD (Del. Super. Ct.).  ACON filed the present Motion on December 20, 2018.

## STANDARD OF REVIEW

"Defendants bear the burden of proof on all elements of the *forum non conveniens* analysis." *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794 (5th Cir. 2007).  A party to a contract with a forum selection clause seeking to assert that clause against a non-signatory "bears the burden of proving the theory upon which it relies to bind the non-signatory to the contract." *Lujan v. Alorica*, 445 S.W.3d 443, 448 (Tex. App.—El Paso 2014, no pet.).  Even if a mandatory forum selection clause applies, the court may retain the case if public interest factors weigh in favor of doing so.  *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 61 (2013).

## ARGUMENT

Federal law controls the question of whether to enforce a forum selection clause in a dispute in federal court.  *Atl. Marine*, 571 U.S. at 61.  However, "the interpretation of a forum selection clause is an analytically distinct concept from the enforceability of that clause." *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 181 (3d Cir. 2017); *Weber v PACT XPP Tech., AG*, 811 F.3d 758, 770 (5th Cir. 2011).  As such, state law should be used to determine the scope of a forum selection clause, that is – "whether the claims and parties involved in the suit are subject to the clause," including non-signatories.  *Collins*, 874 F.3d at 180, 183-85 (quotation omitted).

Issues of contract interpretation are "quintessentially substantive" rather than procedural under

the *Erie* Doctrine, and so courts in diversity actions should apply state contract law to decide

contract interpretation issues, outside of "restricted areas" with "uniquely federal interests" not

present here. *Collins*, 874 F.3d at 182. Moreover, in deciding which state contract law to apply,

the court should apply the choice-of-law rules of the forum state. *See Klaxon Co. v. Stentor*

*Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).[3] The starting place for such an analysis is the

language of the contract containing the forum selection clause.

## I. THE PLAIN LANGUAGE OF THE FORUM SELECTION CLAUSE DEMONSTRATES NO INTENT TO APPLY TO NONPARTIES FIESTA OR ACON

"As a general proposition, a forum-selection clause may be enforced only by and against

a party to the agreement containing the clause." *Pinto*, 526 S.W.3d at 445; *Ball Up, LLC v.*

*Strategic Partners Corp.*, No. 02-17-00197-CV; 02-17-00198-CV, 2018 WL 3673044, at *6-*7

(Tex. App.—Fort Worth Aug. 2, 2018, no pet.) ("*Ball Up*") ("A forum-selection clause, like an

arbitration clause, is generally enforceable only 'by and against' a party to the agreement

containing the forum-selection clause.") (quoting *Pinto,* 526 S.W.3d at 445). "Who is actually

bound by an arbitration agreement is a function of the intent of the parties, as expressed in the

terms of the agreement." *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 358 (5th Cir.

2003) ("*Bridas*"); *Pinto,* 526 S.W.3d at 445 ("the question of who is actually bound to dispute

resolution in the contractually specified forum is [ultimately] a function of the intent of the

---

[3] Here, Texas law, rather than Delaware or federal law, should apply because Texas has a more significant interest in the Texas Claims. Fiesta's claims arose in Texas due to loss suffered in Texas by a Texas limited liability company. As such, Texas has a materially greater interest than Delaware in determination of the subject claims. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (explaining that Texas follows "most significant relationship test to decide choice-of-law issues" (quotation omitted)). Moreover, Fiesta is not a party to the contract containing the Delaware forum clause. To the extent the outcome is the same under these three laws, however, the Court need not engage in a choice-of-law analysis.

parties as expressed by the terms of the agreement."); *see also E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194-95 (3d Cir. 2001) ("*DuPont*").  Where a forum selection clause's "plain language thus disclaims any intent to extend the contract's benefits to nonparties," allowing nonparties to invoke such clause "would contravene the parties' expressed intent and is, thus, impermissible."  *Pinto,* 526 S.W.3d at 445. That is the case here, where the plain language of the MIPA disclaims any intent to bind nonparties ACON or Fiesta to the Delaware prong of the Forum Selection Clause, while enabling a different set of nonparties to invoke a different prong of the same clause.

### A.    The Delaware Forum Selection Clause Is Limited to "the Parties."

To begin with, the portion of the Forum Selection Clause that ACON seeks to invoke against Fiesta, the Delaware forum prong, is expressly limited to "the Parties."  Hook Decl. at Ex. A, § 12.13(a).  That term does not encompass ACON or Fiesta.  *Id.* at Ex. A, Recitals.  By limiting its ambit to the "Parties," the Delaware forum prong implicitly excluded nonparties. Under the bedrock principle of *expressio unius est exclusio alterius*, the naming of one thing implies the exclusion of others.  *E.g.*, *A2D Tech. Inc. v. MJ Sys., Inc.*, 269 F. App'x 537, 542 (5th Cir. 2008).  As the Fifth Circuit explained:

> '[O]mission of defendants from the clause allowing arbitration and as signatories should be regarded as purposeful.'  Specifically, the arbitration provision contained in the Agreement expressly states that it is binding on the 'undersigned, my heirs, executors, administrators and assigns'. . . .  [I]f the parties had intended to benefit the [nonsignatory], then the Agreement would have said so.  *Expressio unius est exclusio alterius*.

*Taylor v. Inv'rs Assocs., Inc.*, 29 F.3d 211, 215 (5th Cir. 1994) (holding omission of particular party from clause as intentional) (citations omitted); *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 854 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (applying *expressio unius* maxim to exclude unenumerated claims from inclusion in term).  But the Forum Selection Clause is not

silent on which nonparties may invoke its terms.  It contains a second prong that identifies the precise group of nonparties intended to invoke its terms.

### B.      The Forum Selection Clause Expressly Identifies the Narrow Group of Nonparties to Which It Applies, Which Does Not Include Fiesta or ACON.

The Forum Selection Clause contains a second prong, calling for a New York forum. Hook Decl. at Ex. A, § 12.13(a).  That prong – omitted by ACON – identifies a group of nonparties (the "Debt Financing Source") to which the Forum Selection Clause extends.  *Id.* Specifically, it provides that no party "nor any of its Affiliates" may bring a claim against a Debt Financing Source "in any way related to this Agreement or any of the transactions contemplated by the Agreement" anywhere other than in the state or federal courts in New York County.  *Id.* Neither ACON nor Fiesta is a Debt Financing Source.[4]  *Id.*

Thus, the drafters of the Forum Selection Clause were not silent on whether a nonparty may invoke the clause.  They spoke directly to the issue and identified the narrow group of nonparties so entitled, a group that does not include ACON or Fiesta.  Moreover, they stated that a nonparty Debt Financing Source may enforce the Forum Selection Clause against not just a party, but also its "Affiliates" – a term that includes nonparties ACON and Fiesta.  Thus, the drafters of the Forum Selection Clause covered the field – they (i) limited the clause to "Parties," (ii) identified the subset of nonparty targets that may apply the clause (a Debt Financing Source), and (iii) made clear that "Affiliates," which include ACON and Fiesta, are bound only with respect to the New York forum not at issue here.

There can hardly be a more clear expression of the intent to prohibit nonparties other than a Debt Financing Source from invoking the Delaware Forum Selection Clause than what is

---

[4] By contrast, both ACON and Fiesta fall within the definition of "Affiliate."  Thus, they are encompassed within the New York prong of the Forum Selection Clause not sought to be invoked by ACON, but not encompassed within the Delaware prong that ACON does seek to invoke.

drafted here.  As such, it would be "impermissible" to allow nonparty ACON to enforce such clause against nonparty Fiesta.  *Pinto,* 526 S.W.3d at 445; *see also Paragon Litig. Tr. v. Noble Corp. (In re Paragon Offshore PLC)*, 588 B.R. 735, 741, 756 (Bankr. D. Del. 2018) (finding that clause binding each "Party" to agreement did not bind directors of signatory where they were expressly included in a provision of contract other than the relevant clause).

C.    **Other MIPA Terms Make Clear When The Drafters Did – and Did Not – Intend to Convey Rights to Third Parties.**

Interpreting the Delaware Forum Selection Clause to exclude nonparties ACON and Fiesta from its ambit is consistent with other provisions in the MIPA that explicitly state when the MIPA intends to convey rights on nonparties.  As an initial matter, both "Affiliate" and "Subsidiary" are defined terms that are not included in the definition of "Party."  Hook Decl. at Ex. A, § 1.1.  "Affiliate" or "Subsidiary" each are used over 70 times throughout the MIPA – including once in the New York prong of the Forum Selection Clause.  *See generally id*. at Ex. A.  Thus, the Parties to the MIPA knew how to encompass nonparties, but chose not to do so for the Delaware prong of the Forum Selection Clause.  Other clauses extend to "successors, assigns, officers, directors and equityholders" (*id*. at Ex. A, § 11.2), other categories of nonparties intentionally omitted from the Delaware prong.  These references are but a few examples showing that the drafters of the MIPA knew how to impose obligations on nonparties, but chose not to do so for the Delaware prong of the Forum Selection Clause.  *See, e.g., Black v. Diamond Offshore Drilling, Inc.*, 551 S.W.3d 346, 353 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding that forum selection clause did not cover nonsignatories where clause applied to "'successors or assigns, dependants [sic], executors or administrators'" of the signatories and nonsignatories did not fit into clause's enumerated categories) (alteration in original) (quoting contract at issue); *Seidensticker v. Gasparilla Inn, Inc.*, No. CIV.A. 2555-CC, 2007 WL

4054473, at *3 (Del. Ch. Nov. 8, 2007) (finding that contract's reference to particular party excluded other parties because agreement would have otherwise used defined term for listed parties that appeared elsewhere in agreement).

The MIPA also made clear when it is *not* conveying rights to third parties.  Section 12.1 of the MIPA is a "no third-party beneficiaries" clause.  Hook Decl. at Ex. A, § 12.1.  It precludes any third-party beneficiary rights under the MIPA other than expressly provided, and then provides that only "Debt Financing Sources" are intended third-party beneficiaries entitled to enforce the Forum Selection Clause.  *Id.*  Thus, the Parties to the MIPA expressly agreed that nonparties "Debt Financing Sources" were the sole intended third-party beneficiaries of the Forum Selection Clause.

Read in context, the plain language of MIPA clearly limits the Delaware prong of its Forum Selection Clause to "the Parties," which do not include ACON or Fiesta.

## II.   ACON FAILS TO PROVE ANY EXCEPTION APPLIES TO THE GENERAL RULE THAT NONSIGNATORIES MAY NOT ENFORCE A CONTRACT.

Undeterred, ACON seeks to turn a blind eye towards the operative contract language and instead focus on estoppel theories to invoke the subject forum clause.  It is true that legal theories exist "by which nonsignatories to a contract may nonetheless enforce a contract's arbitration provision or forum-selection clause against signatories."  *Ball Up*, 2018 WL 3673044, at *6 (citing *Pinto,* 526 S.W.3d at 432).  But ACON stumbles out of the gate here, since it is a nonsignatory seeking to enforce a forum selection clause against a *second nonsignatory*.  Only two of ACON's cases involve a dual non-signatory situation, and both are readily distinguishable from the matter before this Court.[5]

---

[5] In *Harland Clarke Holdings v. Milken*, 997 F. Supp. 2d 561 (W.D. Tex. 2014), the subject contract provided that any person not a party that was entitled to indemnification "shall be considered a third party beneficiary" with "full rights of enforcement as though such Person was a signatory to this Agreement."  *Id.* at 581.  Nonparty Harland

Even if this Court were to apply ACON's theories in a dual nonsignatory context, it must still "determine the intent of the parties as expressed in the terms of the agreement" by "applying ordinary principles of state contract law" to "ascertain whether, based on the language of the forum-selection clause, a nonsignatory to the contract may enforce it." *Ball Up,* 2018 WL 3673044, at \*6; *Black*, 551 S.W.3d 346 at 352.  Fifth and Third Circuit courts do likewise. *Bridas*, 345 F.3d at 358 ("Ordinary principles of contract and agency law" guide determination of who is bound to forum selection clauses); *DuPont,* 269 F.3d at 194 (nonsignatory cannot be bound unless "traditional principles of contract and agency law" render it "akin to a signatory") (quotation omitted).  Thus, ACON's theories cannot be applied without reference to the very contractual language which defeats its Motion.  Even when that is overlooked, ACON's theories are unavailing.

### A.    The "Closely Related" Theory Is Meritless.

ACON first argues that Fiesta was "so closely related to the MIPA that it was foreseeable it would be bound" to the Forum Selection Clause.  Mot. at 13.  The closely related and foreseeable doctrine is a twist on the equitable estoppel doctrine, and courts have questioned whether it should be recognized.[6]  Even if applied, however, ACON mischaracterizes the test.  In applying the closely related doctrine, courts focus not on the nonsignatory's relationship to the

---

Clarke was entitled to indemnification and so, the court determined, was a third-party beneficiary entitled to enforce the forum selection clause. *Id.* at 581-82. Here, by contrast, the MIPA contains no such provision and, to the contrary, expressly limits third-party beneficiary status for enforcing the Forum Selection Clause purposes to Debt Financing Sources.  In *Carlyle Investment Management v. Moonmouth*, 779 F.3d 214 (3d Cir. 2015), nonparty Plaza was the director of party Moonmouth, signed the contract "on Moonmouth's behalf," participated in the negotiations of the contract, and was the source of funds for Moonmouth.  *Id.* at 219.  Those facts are not present here.  Of note, the *Carlyle* forum selection clause did not reference the "Parties" as the MIPA does.  Finally, neither *Harland Clarke* nor *Carlyle* involved a clause that, as here, expressly identified which nonparties may enforce it.

[6] *E.g.*, *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 62 n.6 (3d Cir. 2018) ("*McGraw*") (noting "ambiguity in our cases concerning whether we even recognize the closely related parties doctrine"); *Black*, 551 S.W.3d at 356 (observing that Supreme Court of Texas has "declined to decide" whether doctrine applied and instead focused on parties' intent as expressed in agreement).

*agreement* (as ACON argues), but rather on its relationship to the *signatories* thereof.  *See*

*DuPont*, 269 F.3d at 199.  The relationship between signatory and nonsignatory must be such

that it would be foreseeable to bind the nonsignatory to the forum selection clause in the

agreement.  *Pinto,* 526 S.W.3d at 445; *McGraw*, 909 F.3d at 64.  Here, ACON's sole argument is

that Bodega "own[ed] and control[led]" Fiesta after the transaction closed.  Mot. at 15.  But that

is the wrong inquiry.  Courts look at what "was clearly foreseeable at the time of contracting."

*Atl. Marine*, 574 U.S. at 64.  At the time of contracting – March 23, 2018 – Bodega had no

relationship to Fiesta.  Pet. ¶¶ 46-47.  Even looking at its post-contracting role, Fiesta's status as

an indirect subsidiary of Bodega is not sufficient to render it akin to a signatory to the MIPA.

*See DuPont*, 269 F.3d at 202.  As the Supreme Court of Texas explains:

> 'A corporate relationship is generally not enough to bind a nonsignatory to an
> arbitration agreement.'  Unlike a corporation and its employees, corporate affiliates
> are generally created to separate the businesses, liabilities, and contracts of each.
> Thus, a contract with one corporation—including a contract to arbitrate disputes—
> is generally not a contract with any other corporate affiliates.

*In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 191 (Tex. 2007) (citations omitted).

It is black-letter law that the "corporate form cannot be discarded and a non-signatory

required to arbitrate unless its conduct falls within one of the accepted principles of agency or

contract law that permit doing so."  *DuPont*, 269 F.3d at 202.  This is particularly true here, as

the rights Fiesta seeks to vindicate – its insurance recovery rights for a pre-MIPA loss – belong

to Fiesta, not Bodega.  *See* Section IV, *infra*.  ACON's cases are not to the contrary.[7]

---

[7] Fiesta was not a director or officer of any of the Sellers at the time of the Transaction.  *Cf. ASDC Holdings, LLC v. Richard J. Malouf 2008 All Smiles Grantor Retained Annuity Tr.*, No. CIV.A. 6562-VCP, 2011 WL 4552508, at *7 (Del. Ch. Sept. 14, 2011) (nonsignatories were directors/officers of signatory); *Ashall Homes Ltd. v. ROK Entm't Grp. Inc.,* 992 A.2d 1239, 1249 (Del. Ch. 2010) (same).  Likewise, Fiesta is not a corporation formed by the signatory for the sole purpose of carrying out the obligations of the contract.  *Cf. Jordan v. SEI Corp.*, No. 96-1616, 1996 WL 296540, at *3 (E.D. Pa. June 4, 1996) (nonsignatory formed for sole purpose of carrying out obligations of contract); *Brock v. Entre Computer Ctrs., Inc.*, 740 F. Supp. 428, 431 (E.D. Tex. 1990) (same); *Stephens v. Entre Computer Ctrs., Inc.*, 696 F. Supp. 636, 639-40 (N.D. Ga. 1988) (same).  *Hugel v. Corp. of Lloyd's* is also inapplicable because the lawsuit arose from conduct during an internal investigation in which the plaintiff-signatory

Finally, considerations of equity weigh against application of this estoppel theory. This is not the prototypical signatory-plaintiff versus nonsignatory-defendant case; instead both Fiesta and ACON are nonsignatories. Indeed, Texas courts applying this doctrine typically limit it to "transaction participants," a concept that the Supreme Court of Texas has recognized "solely in the context of a nonsignatory defendant attempting to enforce a forum-selection clause against a signatory plaintiff . . . and not the reverse." *See Pinto*, 526 S.W.3d at 444 (quotation omitted).

## B. Direct Benefits Estoppel Does Not Apply.

As a fallback, ACON argues for direct benefits estoppel. Under that doctrine, a nonsignatory may be compelled to adhere to a forum selection clause "if it either (1) 'seeks through the claim, to derive a direct benefit from the contract containing the arbitration provision,' or (2) 'deliberately seeks and obtains substantial benefits from the contract outside the context of its claim.'" *USHealth Grp., Inc. v. South*, 636 F. App'x 194, 200 (5th Cir. 2015).

Neither prong is satisfied here. First, through its claim, Fiesta does not seek to derive a benefit from the MIPA. Fiesta's claimed right to Hurricane Harvey insurance rights and proceeds derive from the Primary Policies, not the MIPA. Those rights vested at the time of the loss, August 25, 2017, which predates the MIPA. *See Potomac Ins. Co. v. Woods*, 1:95-CV-469, 1996 WL 450687, at *4, *7 (E.D. Tex. July 22, 1996) (applying Texas law and noting that it is a "well-founded rule of insurance law . . . that a claim for insurance benefits accrues at the time of loss" and that "the right to insurance proceeds attaches at the time of loss"); *see also Highlands*

---

involved the plaintiff-nonsignatories (which he wholly-controlled) by providing information from them, rendering them closely related to the dispute and subject matter of the agreement. 999 F.2d 206, 209-10 (7th Cir. 1993). Notably, the defendant was also a signatory to the subject agreement. (*Id.* at 207.) The circumstances in that case are a far cry from those in the instant case where a nonsignatory seeks to enforce rights unrelated to the MIPA against another nonsignatory. Nor can Fiesta be a third-party beneficiary under the Forum Selection Clause in light of the MIPA's clear statement that only Debt Financing Sources may occupy that role. *Cf. Weygandt v. Weco, LLC*, C.A. No. 4056-CVS, 2009 WL 1351808 (Del. Ch. May 14, 2009); *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd,* 709 F.2d 190, 203 (3d Cir. 1983) *overruled on other grounds*, *Lauro Lines v. Chasser*, 490 U.S. 495 (1989).

*Ins. Co. v. City of Galveston*, 721 S.W.2d 469, 471 (Tex. App.—Houston [14th Dist.] 1986, writ

ref'd n.r.e.) (noting that property insurance is a "personal contract for indemnity . . . at the time

of the loss").  Fiesta's insurance rights thus arose before the MIPA and continue on after the

MIPA.  Conversely, ACON contends those rights never existed, either before or after the MIPA.

In short, Fiesta's insurance rights in no way "rely on the terms of the written agreement."  *Hill v.*

*G.E. Power Sys., Inc.*, 282 F.3d 343, 348 (5th Cir. 2002); *Bridas*, 345 F.3d at 362 (Direct

benefits estoppel applies only when "the nonsignatory had brought suit against a signatory

premised in part upon the agreement.").

ACON's cases demonstrate why Fiesta's claims are independent of the MIPA.  In

*Hellenic*, a nonsignatory-plaintiff ship-owner sued a ship classification organization for alleged

misclassification of the ship purchased.  *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d

514, 515-16 (5th Cir. 2006).  The classification duties upon which the ship-owner sued arose

from a contract to which the ship-owner was not a party.  *Id.* at 518.  Finding the nonsignatory-

plaintiff ship-owner had embraced the benefits of the classification contract, the Court bound it

to the forum selection clause therein.  *Id.* at 518-20.  In doing so, the Fifth Circuit indicated it

would not do the reverse, namely apply direct benefits estoppel against a nonsignatory

defendant.  *Id.* at 515-16.  In *SGIC,* nonsignatory-plaintiffs' own pleadings describe the

controversy as based on "the interpretation of the franchise agreements" which contained the

forum selection clause.  *SGIC Strategic Glob. Inv. Capital, Inc. v. Burger King Eur. GMBH*, No.

3:14-cv-3300-B, 2015 WL 12731761, at *11 (N.D. Tex. Aug. 26, 2015), *aff'd,* 839 F.3d 422 (5th

Cir. 2016).  Here, by contrast, Fiesta did not "embrace" the MIPA, its claims in no way rely upon

the MIPA, and its Petition never even mentions the MIPA.  And unlike in both *Hellenic* and

*SGIC*, Fiesta is a nonsignatory-defendant, the very category to which the Fifth Circuit said this doctrine does not apply.[8]

ACON spills much ink over Section 7.14 of the MIPA, requiring Bodega to cause its Subsidiaries to remit "business interruption" insurance recoveries to Fiesta Holdings. Mot. at 5-6, 11-12, 15. But this is not a case involving Bodega's obligations to Fiesta Holdings, neither of which is even a party to this action. Nor do Fiesta's Texas Claims seek business interruption recoveries under the Primary Policies. If anything, by reserving for Fiesta Holdings solely business interruption recoveries under the Primary Policies, Section 7.14 tends to show no similar reservation for the property damage insurance recoveries at issue in this action.

The second prong of direct benefits estoppel – whether Fiesta sought and received substantial direct benefits from MIPA outside the context of its claims – is likewise not satisfied. Direct benefits estoppel "is inapplicable . . . when the benefit is merely indirect." *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 184 (Tex. 2009). The only purported "substantial direct benefit" that ACON alleges is Fiesta's latent right to indemnification for certain breaches of the MIPA not at issue here. Mot. at 16. ACON does not contend such breaches have occurred or indemnification has been paid to Fiesta thereunder. Texas courts have declined to find any substantial direct benefit from indemnity provisions without evidence that the party seeking enforcement "actually indemnified" the party opposing enforcement. *Carlile Bancshares, Inc. v.*

---

[8] ACON's reliance on *Vloeibare Pret v. Lloyd's Register North America*, 606 F. App'x 782 (5th Cir. 2015) and *Smith v. Kenda Capital, LLC*, 451 S.W.3d 453 (Tex. App.—Houston [14th Dist.] 2014, no pet.) is unavailing. In *Vloeibare*, the nonsignatory-plaintiff directly benefited from the signatory-defendant's performance under the contract containing the forum selection clause because the plaintiff relied on that performance when purchasing a yacht, and the claims were based on signatory-defendant's performance under that contract. *Vloeibare Pret*, 606 F. App'x at 785-86. In *Smith*, a nonsignatory-defendant enforced a forum selection clause against a signatory-plaintiff because plaintiff alleged that he was fraudulently induced into accepting employment with the nonsignatory-defendant based on representations made in connection with the agreement containing the forum selection clause. 451 S.W.3d at 458-60. In both cases, there was (i) a signatory among the parties, and (ii) the claims were directly related to the agreement containing the forum selection clause; neither fact is true in this case.

*Armstrong*, No. 02-14-00014-CV, 2014 WL 3891658, at *9 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.); *cf. In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005) (plaintiff cannot avoid arbitrating under contract she helped negotiate but did not sign over claim from home repairs completed pursuant to that contract).  Such unfulfilled indemnification rights concerning claims not at issue are simply "tenuous connections" insufficient to show that Fiesta "sought and obtained a substantial benefit" from the MIPA.  *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 499 (5th Cir. 2011).

## III.    NONSIGNATORY ACON LACKS AUTHORITY TO ENFORCE THE DELAWARE FORUM SELECTION CLAUSE.

ACON argues that it is "so closely related" to the Sellers that it may enforce the Forum Selection Clause. Mot. at 19.  But the "transaction participant" theory on which it relies does not apply in situations, like here, where the forum selection clause identifies the "narrow group of nonparties" entitled to invoke that clause.  *Pinto,* 526 S.W.3d at 445-46; *cf. DuPont*, 269 F.3d at 202 (collecting cases enforcing forum selection clause only against signatories).  While ACON was related to Sellers, it does not claim they are alter egos or the Court should pierce the corporate veil.  *See DuPont*, 269 F.3d at 201 (courts must not "disregard[] the corporate form [by] treating a non-signatory like a signatory").  ACON also contends it benefitted from the MIPA via indemnification rights, but not that it has received any monies thereunder, making those rights ineffective for estoppel purposes.  *See Carlile*, 2014 WL 3891658, at *9.  Accordingly, ACON lacks authority to enforce the Forum Selection Clause.

## IV.    THE TEXAS CLAIMS ARE BEYOND THE SCOPE OF THE FORUM SELECTION CLAUSE.

By its terms, the Forum Selection Clause applies to three types of actions: (1) those "arising out of or relating to" the MIPA, (2) those arising from the "transactions contemplated

by" the MIPA, and (3) those arising from "any facts and circumstances leading to [the MIPA's] execution or performance."  Hook Decl. at Ex. A, § 12.13.  None encompasses the Texas Claims.

The Texas Claims do not arise out of or relate to the MIPA.  They seek property damage insurance rights, which vested at the time of the August 25, 2017 loss, well before the March 2018 execution of the MIPA.  *See Potomac Ins. Co.*, 1996 WL 450687, at *4, *7 (it is a "well-founded rule of insurance law . . . that a claim for insurance benefits accrues at the time of loss" and that "the right to insurance proceeds attaches at the time of loss").  The theft of those rights and the resulting proceeds under the Primary Policies would have been actionable regardless of whether the MIPA was executed.  The Texas Claims also stand independently of the MIPA and will not be determined by reference to it.  No provision of the MIPA references property damage rights or proceeds under the Primary Policies.  As such, the Texas Claims do not arise out of or relate to the MIPA.  *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 528-29 (Tex. 2015) (holding that non-signatory plaintiff cannot be compelled to arbitrate where claims stand independent of contract); *In re Kellogg Brown & Root*, 166 S.W.3d at 740 (holding that "non-signatory plaintiff cannot be compelled to arbitrate on the sole ground that, but for the contract containing the arbitration provision, it would have no basis to sue" and emphasizing that claim must have direct tie to contract).

Nor do the Texas Claims arise from the transactions contemplated by the MIPA.  ACON asserts that "but for" the MIPA, no claim would arise.  Mot. at 12.  This fundamentally misapprehends who is asserting the Texas Claims.  Fiesta, not Bodega, asserts rights under the Primary Policies.  Fiesta, not Bodega, asserts ACON interfered with those rights.  And Fiesta, not Bodega, asserts the Texas Claims.  Fiesta would have the Texas Claims even if ACON had never sold Fiesta, as ownership of a subsidiary does not transform the subsidiary's losses into the

parent's.  *Cf. Unijax, Inc. v. Factory Ins. Ass'n*, 328 So. 2d 448, 453 (Fla. App. Ct. 1976)

("[A]bsent establishment of a transfer of rights from [subsidiaries] to [parent] Unijax, Unijax

must establish, in its own right, its own entitlement under the [insurance] contract sued upon.").

Nor do the Texas Claims arise from facts or circumstances leading to the MIPA's

execution.  Here ACON points to Section 7.14 of the MIPA, which speaks to obligations of

Bodega to Fiesta Holdings respecting business interruption payments under the Primary Policies.

But Section 7.14 is an obligation of Bodega, a nonparty to this action.  Moreover, the subject of

Section 7.14, business interruption insurance recoveries, is not among the Texas Claims.  And

neither Fiesta nor Bodega has received any business interruption payments anyway.  *See* Walker

Decl. ¶ 14; Hook Decl. ¶ 5.  So ACON's Section 7.14 argument is an unripe and unasserted

claim.  If anything, Section 7.14 shows the parties to the MIPA intended that only business

interruption – not property damage – insurance recoveries should go to Fiesta Holdings.

## V.   AN INTERESTS ANALYSIS UNDER BOTH *FORUM NON CONVENIENS* AND § 1404(A) SHOWS THAT TEXAS IS THE PROPER FORUM.

### A.   ACON Fails to Establish that Dismissal or Transfer Is Warranted.

A motion to dismiss for *forum non conveniens* and a motion to transfer under Section

1404(a) are both judged on a balancing-of-the-interests test by weighing public and private

interest factors.  *Atl. Marine*, 571 U.S. at 62-63.  Ultimately, the court must determine, on

balance, if the transfer would serve the convenience of the parties and the interest of justice.  *Id.*

at 62-63; *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

Here, there is no binding forum selection clause between nonparties ACON and Fiesta

respecting the Texas Claims, and so ACON bears the burden of proving both sets of factors

justify depriving plaintiff Fiesta of its chosen forum.  *Festor*, 647 F. Supp. 2d at 754.  Even if a

binding forum selection clause were present, ACON must still carry the burden of proving the public interests justify moving this case to another forum. *Id.* ACON fails to do either.

        1.    *Public Interest Factors Weigh In Favor of Texas.*

ACON concedes it must establish that the public interests factors favor a Delaware forum for this action. Mot. at 20. But ACON literally just lists the factors and flatly concludes that "[n]one of these factors warrant disregarding the forum selection clause here." *Id.* A single conclusory sentence without legal or factual support is not sufficient evidence that the public interest factors warrant dismissal. Accordingly, the Court's analysis can end here. *E.g., Festor*, 647 F. Supp. 2d at 756-59 (denying dismissal for *forum non conveniens* because movant failed to present evidence and thus burden of proof was not satisfied). Even if the analysis were undertaken, however, it favors this Texas forum. The public interest factors are:

> (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).

As an initial matter, the public interest factor related to local interest in the litigation overwhelmingly favors proceeding in Texas. *Eolas Tech., Inc. v. Adobe Sys., Inc.*, No. 6:09-CV-446, 2010 WL 3835762, at *6 (E.D. Tex. Sept. 28, 2010) (local interest factor based on "factual connection" case has with venue). This is indisputably a Texas case. Hurricane Harvey devastated Houston and its surrounding communities. The Southern District of Texas encompasses Houston and has a strong interest in deciding whether insurance proceeds stemming from this catastrophic event may be pilfered from a Houston-based company.

Similarly, Fiesta's claims sound in Texas tort law. While federal courts can apply foreign state law, this Court is likely more familiar with Texas law than a Delaware state court, and thus

the factor related to the familiarity of the forum with the law that governs the case weighs in favor of Texas.  The court congestion factor is neutral, as both Delaware state courts[9] and this Court are burdened.  *Bruce v. NOMAC Drilling LLC*, No. 2:10-cv-204-DF-CE, 2011 WL 749756 (E.D. Tex. Feb. 24, 2011).  Fiesta's choice of forum is not overcome.  *DTEX, LLC*, 508 F.3d at 795.  Finally, conflicts of laws are unlikely to arise, given the common contractual principles at issue.  Because the local interest in the litigation overwhelmingly favors Texas and the remaining factors are neutral or tilt towards Texas, the public interest factors dictate that this matter remain in this Court, even if a forum selection clause applied here.

> 2.     *Private Interest Factors Weigh In Favor of Texas.*

The private interest factors likewise favor Texas.  Those factors are:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft Co.*, 454 U.S. at 241 n.6.  The plaintiff's choice of forum is given a favorable presumption.  *Festor*, 647 F. Supp. 2d at 754.

None of the private interest factors favor Delaware over Texas.  The relative ease of access to sources of proof weighs slightly in favor of venue in Houston.  *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 767 (E.D. Tex. 2009) ("Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis.").  Here, the damaged stores are located in or near Houston, the repairs were conducted in or near Houston, and the insurance proceeds

---

[9] Delaware state courts have experienced a 30% increase in filings in fiscal year 2017 in the Complex Commercial Litigation Division (the division in which the competing action is pending). Del. Judiciary, *Ann. Report*, 27 (2017), https://courts.delaware.gov/AOC/AnnualReports/FY17/doc/AnnualReport2017.pdf (last visited Jan. 14, 2019). While Fiesta recognizes the congestion of this Court, it seems unlikely that the burdened Delaware courts would be more efficient than this Court.

belong to Fiesta in or near Houston.  Walker Decl. ¶¶ 4-13.  Bank, financial, insurance, and store records relating to the claim are also maintained in Houston.  *Id.* ¶¶ 7-13.

The availability of compulsory process to secure witness attendance and the cost of attendance for willing witnesses weigh slightly in favor of proceeding before this Court.  *JPT Grp., LLC. v. Steven Madden Retail, Inc.*, No. CV H-15-3264, 2016 WL 3523878, at *4 (S.D. Tex. June 28, 2016) (finding that where some third-party witnesses resided in Texas, Southern District was appropriate forum).  Some of Fiesta's anticipated witnesses reside in Texas, and others reside in California and Illinois.  Walker Decl. ¶¶ 14-18.  ACON states that its members reside in Maryland.  Not. of Removal, Dkt. 1.  Upon information and belief, other ACON witnesses reside outside of Delaware.  Walker Decl. ¶ 16.  In any event, upon information and belief, none of the witnesses reside in Delaware or are subject to the compulsory process of Delaware courts.  *Cf. id.* ¶¶ 14-18.  Accordingly, this factor weighs slightly in favor of proceeding in this Court given that some of the witnesses reside in Texas.

The fourth and final private interest factor is other practical problems that make trial of a case easy, expeditious, and inexpensive.  *Piper Aircraft Co.*, 454 U.S. at 241 n.6.  ACON fails to assert any factor in this regard that could overcome the presumption in favor of Fiesta's choice of forum as the plaintiff in this action.  *DTEX, LLC*, 508 F.3d at 795.  Therefore, this factor is neutral or weighs slightly in favor of retaining the case before this Court.  Thus, the private interest factors too weigh in favor of Texas.

<u>**CONCLUSION**</u>

For the foregoing reasons, ACON's Motion should be denied.

Dated: January 24, 2019

Respectfully Submitted,

/s/ *Penny P. Reid*

Penny P. Reid
State Bar No. 15402570
Fed. Bar No. 23583
preid@sidley.com
Tiffanie N. Limbrick
State Bar No. 24087928
Fed. Bar No. 2799856
tlimbrick@sidley.com
SIDLEY AUSTIN LLP
2021 McKinney Ave, Suite 2000
Dallas, Texas 75201
Tel: (214) 981-3300
Fax: (214) 981-3400

Thomas D. Cunningham
(*pro hac vice* application pending)
tcunningham@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

*Counsel for Plaintiff Fiesta Mart, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff Fiesta Mart L.L.C.'s

Response to Defendant's Motion to Dismiss for *Forum Non Conveniens* or Transfer Under 28

U.S.C. § 1404(a) and accompanying Declaration of Jack Hook, Declaration of Stacy Walker,

Appendix of Unreported Cases, and Proposed Order were served on the following counsel of

record via ECF on January 24, 2019:

| | |
|---|---|
| Michael K. Ross | Robert A. McNiel |
| Paul C. Rauser | State Bar No. 24043814 |
| Alison Van Horn | Paul Green |
| AEGIS LAW GROUP LLP | State Bar No. 24081405 |
| Market Square West - Suite 740 | CALHOUN BHELLA & SECHREST |
| 801 Pennsylvania Avenue, N.W. | 325 N. Saint Paul Street, Suite 2300 |
| Washington, D.C. 20004 | Dallas, Texas 75201 |
| Tel: (202) 737-3500 | Tel: (214) 981-9200 |
| Fax: (202) 735-5071 | Fax: (214) 981-9203 |
| mross@aegislawgroup.com | rmcniel@cbsattorneys.com |
| prauser@aegislawgroup.com | pgreen@cbsattorneys.com |
| avanhorn@aegislawgroup.com | |

*Counsel for Defendant ACON*
*Investments, LLC*

 */s/ Tiffanie N. Limbrick*
Tiffanie N. Limbrick